No. 9412.

NEW ORLEANS COTTON EXCHANGE VS. BOARD OF ASSESSORS.

The assessment of the property of a tax payer on the rolls and the modes used in fixing its value, are presumed to be correct until he establishes the reverse.

The income derived is not always the proper criterion.

That rule surely does not apply to exceptional property, which is not designed to yield a rental or commercial purposes, but destined wholly, or mainly, for personal use, benefit and gratification.

Real estate subjected to a servitude does not cease to belong to the grantor who continues to own the same and who can dispose of the same as he may please, provided he does not thereby interfere with the enjoyment of the servitude by the creditor thereof.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*Bayne & Denegre* for Plaintiff and Appellant.

*W. H. Rogers*, City Attorney, and *Wynne Rogers*, Assistant City Attorney, for Defendant and Appellee.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The plaintiff appeals from a judgment refusing to reduce the assessment of its real estate from $310,000 to $200,000, which is alleged to be its *cash* value and at which it should have been listed under Sec. 25 of Act 96 of 1882.

The assessment is of the lot and building known as the "Cotton Exchange," in this city, and of a strip of ground adjoining it.

The witnesses heard are auctioneers, the Treasurer and an employee of the company.

Their testimony is conjectural. They express the opinion that the main property is not worth more than two hundred thousand dollars, regardless of the cost price of both, within a few years, which nears $400,000.

In arriving at that conclusion, they say that they are guided by the rule generally adopted and which is: to ascertain the rental or income of property and then to multiply it by ten; that as the property in question, at best, could yield $20,000 annually, it should not be assessed at more than ten times that amount.

The burden of proving that it is excessive was upon the plaintiff.

It is settled that the assessment of the property of a tax payer on the rolls and the modes used in fixing its value, are presumed to be correct until he proves the contrary. New Orleans vs. Bank, 31 Ann. 826; also 29 Ann. 851, affirmed in 99 U. S., p. 97.

The assessors, says Judge Burroughs (On Taxation), act judicially in making an assessment. They proceed upon inquiry, and hear and determine from all the information before them of the value of the property.

After reviewing the legislation of a number of sister States on the subject of the valuation of property, he concludes, as the result of his studies, that the substance of the provisions of the law is the same in each State, the assessment being the *value* of the land, looking to all the circumstances of its surroundings or what may be regarded as the cash market value, and that the income derived is not the proper criterion in ascertaining its value. (pp. 227-8, ed. 1877.)

If it were true that these conclusions do not rest on solid reasoning and authority, and that the rule which the plaintiff has strenuously endeavored to lay down is correct and has been established, it could be invoked only as applicable to the general class of ordinary property coming within its purview and which is susceptible of bringing revenue, and could not be applied to exceptional property, beyond its purport, which is not designed to yield a rental or income, or commercial purposes, but destined, wholly or mainly, for personal use, benefit and gratification.

In such cases the correct rule would seem to be to assess at the price invested, where the purchase or improvement is of a recent date, and it is not shown that the property has since deteriorated in value, for some cause or other.

No evidence has been adduced to show that the property in this case has declined since the purchase of the lot and erection of the building upon it.

As that circumstance would have been an important factor, it is inferable, to some reasonable extent, that the property, far from diminishing, has become more valuable.

The "Cotton Exchange" was constructed for the exclusive benefit of its members, although certain parts of the building have been rented out.

That building consists of a splendid edifice, unusually large, imposing in appearance, ornamented inside and outside by gorgeous fresco paintings and decorations, and admirable artistic statuary, lofty and sumptuous in all its parts.

Cotton Exchange vs. Board of Assessors.

It is immaterial whether the large sums of money which the lot and building have cost were or not invested for profit. It is enough that the property exists and is not exempt from taxation to justify its assessment at its value, all surrounding circumstances considered.

We notice in the transcript a statement of expenditure items for running the elevator, for the insurance premium and the taxes, but we fail to perceive in it any account of the revenues of the property beyond the actual or supposed rental thereof. Had that revenue, in addition to the balance struck ($7785) been stated, it is not impossible that it would have shown that the $390,000, cost price, have not been injudiciously invested.

The evidence shows that the lot has cost $74,000, that the magnificent structure upon it was put up for $300,000 and is now insured for $175,000, which is deemed sufficient to repair any damage to it by fire. Clearly, the assessment of both the lot and the building at $300,000, which is one-fourth less than cost of lot and building, should not be disturbed as unreasonable.

There is further complaint of the assessment of a strip of land adjoining the Exchange, on the ground that it is an open thoroughfare in constant and general use by the public, and therefore no more liable to taxation than a street can be. It does not seem to be denied that the strip, in itself, is worth the amount at which it was assessed.

This strip has not ceased to belong to the plaintiff, by which it was burdened with a "perpetual servitude" in favor of the adjoining or contiguous estate, in the compromise of a pending suit between the owners. It never was dedicated to public use and can be alienated or encumbered by the plaintiff notwithstanding the servitude, provided it does not thereby interfere with the enjoyment of the conceded servitude. R. C. C. 489, 492, 658, 605, 779; C. N. 544, 621, 701.

Confronted with the facts of the original and recent cost of the lot and building, of the assessment thereof by the sworn and impartial officers of the law, specially constituted for the purpose, of the actual unquestionable intrinsic value of the property, we cannot arrive at the conclusion that the district court has erred in its appreciation of the facts and application of the law.

It is therefore ordered and decreed that the judgment appealed from be affirmed, with costs.

## CONCURRING OPINION.

FENNER, J. Nothing is better settled than that the valuation of property for taxation by official assessors is in the nature of a judicial

act, protected by all presumptions in favor of its fairness and correctness, and subject to reduction only on clear, affirmative proof that it is excessive.

The assessors have valued the property at $310,000, which is supported by proof that its recent actual cost to the owner was about $395,000, and that the owner insures the building alone at $175,000, which, considering the indestructible character of the construction, indicates a valuation which, added to the value of the land, would not fall short of the amount fixed by the assessors.

There is no proof that the cost was particularly extravagant, at least to an extent affecting this assessment; or that the property has since deteriorated in value; or that the owner would sell it for an amount less than its cost.

The only evidence opposed by the owner is the testimony of certain experts in real estate, who adopt a rule of valuation based upon a relation to the rental value of the property, and who, on that basis, estimate it at not exceeding $200,000.

If we were to accept this rule and carry it to its legitimate results, there seems no good reason why the assessment should not be reduced to $125,000 as readily as to $200,000.

The rule is just enough when applied to ordinary commercial property, built and adapted for common and ordinary commercial purposes and with a view to occupation or rental for such purposes.

But so far as this property is concerned, it was not constructed for such purposes. It was built for the peculiar purpose of a cotton exchange, an unique institution, in its nature exclusive of the existence of any similar one.

It chances that the upper portions of the building are adapted to renting purposes. But that is a mere accident. Suppose it had pleased the projectors to throw the entire interior into a vast and lofty rotunda for its own exclusive occupancy. This might have been even more costly; yet under the rule adopted by the experts in this case, its rental value would have been vastly reduced and we might have been called on to reduce the assessment in proportion.

The most palatial residence in the city, if thrown upon the market for rent, might not bring more than $1800 or $2000 a year. Should it, therefore, be assessed at only $18,000 or $20,000, though its recent cost may have been $50,000 or $75,000?

Obviously the rule of the experts is not applicable to such cases.

There exists, in fact, no rigid rules for the valuation of property, which is affected by a multitude of circumstances which no rule could foresee or provide for.

The assessors must consider all these circumstances and elements of value, and must exercise a prudent discretion in reaching conclusions.

Where it is shown that their assessments are manifestly excessive, they will be reduced; but where the judicial mind is left in doubt, on the evidence, whether such excess exists, I think it a sound rule to leave the assessment undisturbed.

In this case, the action of the assessors has been approved by the judge of the district court, as well as by this Court.

I, therefore, concur in the decree rendered herein.

MANNING, J., concurs in this opinion.