the plaintiff. Here the parties are all before the court; each seeks its equitable interposition; and under such circumstances, under the authorities we have cited, the court is possessed of ample power to determine every question involved in accordance with equitable principles. Reaching this conclusion, we see no reason why the judgment of the trial court, so far as it required a release of the damage and the grant of an easement to maintain the wall upon the payment of $5,-000, should not be upheld. The damages which have been awarded are certainly all which the plaintiff's proofs show him entitled to recover on account of the existence of the overhang; consequently, no fault can be found with the amount of the award. The enormous cost of taking down the wall, and the hardship which it would entail upon the defendant, are met by no corresponding benefit to the plaintiff which is not satisfied by the damages awarded. The equitable principle, therefore, which denies a mandatory injunction in such cases, was properly applied, and finds fair adjustment in the judgment of the trial court. It is quite possible to embody in a judgment a protection of defendant's right to maintain its wall on the payment of damages, without requiring a grant of the easement, but the result is not different if the easement be conveyed; and in Amerman v. Deane, supra, it was decided that the execution of the conveyance was appropriate and proper. In either case it is a mere matter of establishing the right in the defendant upon the payment of the money. In this respect, therefore, we reach the conclusion that the judgment should be affirmed.

The relative positions of the parties with respect to the swinging shutters and the projecting cornices are entirely different. The defendant knew, or, if not, was chargeable with knowledge, that these structures encroached upon the plaintiff's property rights. They are, therefore, unlawful in their character, and defendant may invoke no equitable principle for their protection. The principle enunciated in the cases we have cited condemns their existence. In this respect, therefore, the plaintiff became entitled to a mandatory injunction restraining their maintenance and compelling their removal. The court is not authorized, under such circumstances, to permit their retention for any period, or couple the same with any conditions. This part of the judgment, therefore, should be reversed, and a mandatory injunction compelling their removal awarded to the plaintiff.

The judgment should be modified as above indicated, and, as modified, affirmed, with costs to the appellant. All concur.

---

(61 App. Div. 129.)

**PEOPLE ex rel. DELAWARE & H. CANAL CO. v. FEITNER et al.,
Tax Com'rs.**

(Supreme Court, Appellate Division, First Department. May 10, 1901.)

**1. TAXATION—CORPORATION—PROPERTY SUBJECT—COMPUTATION.**
Where a domestic railroad corporation acquires property of another similar corporation, subject to certain liens, the value of such liens must be deducted from the value of the property so acquired, in determining the property subject to taxation under Laws 1896, c. 908, § 12, requiring the taxation of the stock and surplus profits of corporations.

2. Same.

Where a 'omestic railroad corporation leases the property and franchises of a ι milar corporation subject to certain liens thereon for the full time of iι· charter, the value of the property should not be assessed to the lessee, ι ιder Laws 1896, c. 908, § 12, requiring the taxation of the stock and surpl з profits of corporations, but only the value of the lease, to be determined by considering the nature of the property, its profits and duration, but excluding the value of the lease of the franchises.

3. Same—Erroneous Assessment—Remand—Power of Supreme Court.

The appellate division of the supreme court has power·to remand a tax assessment found to be erroneous, to the tax commissioners, for correction.

4. Same—Deduction of Indebtedness—Grantors.

Tax Law, § 6, provides that no reduction shall be allowed in the assessment of personal property on account of any indebtedness as surety, guarantor, etc. Property of a railroad was leased during the entire continuance of its charter and of any renewals thereof, and certain bonds were issued by the lessor, representing a debt due by it, and not by the lessee, which were indorsed by the lessee. *Held*, that such bonds should not be deducted from the assessment of the lessee, since the latter was only bound thereon as a guarantor.

Appeal from special term, New York county.

Certiorari by the people, on relation of the Delaware & Hudson Canal Company, against Thomas L. Feitner and others, as commissioners of taxes and assessments of the city of New York. From an order vacating an assessment (66 N. Y. Supp. 91), the defendants appeal. Order modified.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

James M. Ward and David Rumsey, for appellants.
David Willcox, for respondent.

INGRAHAM, J. There is presented upon this appeal another phase of the vexed question as to the proper basis of an assessment for the taxation of the capital stock and surplus profits of a domestic corporation. The relator, the Delaware & Hudson Canal Company, a corporation owning and operating a railroad in this state, leased from other corporations, also owning and operating railroads in this state, their property and franchise for and during the full term of the respective charters of the lessors; the lessee paying the taxes and charges upon the property, interest upon the bonded debt, and certain fixed dividends upon the capital stock of the lessor corporations. The charter of the Albany & Susquehanna Railroad Company, one of the lessor corporations, expires April 2, 2001; and the charter of the Rensselaer & Saratoga Railroad Company, another of the lessor corporations, expires January 1, 2500. A copy of these leases, at the request of the commissioners of taxes and assessments, was produced upon the hearing before the commissioners, and submitted as part of the examination of the relator. The commissioners had, therefore, before them the evidence of the title of the relator to the property of these lessor corporatʲons. The tax commissioners fixed the value of the property subject to taxation at $71,580,397. This was made up as follows:

Assets per statement ......................................... $46,462,144
Value of real estate leased from the Albany & Susquehanna Rail-
    road Company in perpetuity ............................... 9,442,534
Value of personal property leased in perpetuity from the Albany
    and Susquehanna Railroad Company ........................ 4,758,231
Value of real estate leased in perpetuity from the Rensselaer &
    Saratoga Railroad Company ............................... 9,569,744
Value of personal property leased in perpetuity from the Rensse-
    laer & Saratoga Railroad Company ......................... 1,347,744

      Total assets ......................................... $71,580,397

It will be seen that in this statement of the property of the relator there was included the gross value of the real estate and personal property leased from the Albany & Susquehanna and the Rensselaer & Saratoga Railroad Companies, as though the relator owned this property. There was no evidence before the tax commissioners or before the court below as to the value of the leases, and the assessment was based solely upon the ground that by the leases the railroad had become the owner of the property of the lessor corporations. This property thus leased was subject to the liens of certain mortgages upon it to secure the payments of certain bonds issued by the lessor corporations, and the leases both contained provisions that, upon the failure of the lessee corporation (the relator) to pay the interest upon the bonds and the dividends upon the stock reserved as rent, or upon the failure to perform the other covenants and conditions of the lease, the lessee should have the right of re-entry, and to again take possession of the property leased. To assume this to be an absolute transfer of the property to the relator, subject to the mere rent charge, as seems to have been assumed by the commissioners, would seem to be opposed by the intent of the parties to these leases. It is quite clear from the provisions of the leases that neither of the parties thereto considered that the property of the lessor corporations had been conveyed to the lessee. Undoubtedly it was the intention of the parties that these leases should continue so long as the lessor company performed their obligations under the lease, but they were all based upon the express condition of the continued payment by the relator of the interest and dividends guarantied upon the obligations and stock of the lessor companies. Assuming, however, that the commissioners were right in their conclusion that all this property of the lessor corporation had vested in the relator, the property that the relator acquired by the leases would be the leased property, subject to the liens upon it. Certainly all that the relator acquired was the property subject to these liens, and, to determine the actual value of the property acquired by the lessee, there must be deducted from the gross value of the leased property the amount of those outstanding liens. I do not think, however, that under these leases the lessor acquired the title to the property, but that their interest in it was solely that of lessee. The relator being the owner of the leases, they were property which should have been included in ascertaining the actual value of the relator's capital stock and surplus; and in fixing the value of the leases the commissioners had the right to consider the nature of the estate granted to the relator, its duration,

and the profit, if any, that it acquired in operating the lessor railroad, —deducting, however, the value of the right acquired by the lessee by a lease of the franchises of the lessors, as under the act in question the franchise cannot be valued or included in the assessment, it being taxed under another statute. People v. Barker, 165 N. Y. 339, 59 N. E. 137, 151. The provision of the statute under which this assessment was made (section 12 of the tax law; chapter 908, Laws 1896) is:

"The capital stock of every company liable to taxation, except such part of it as shall have been excepted in the assessment roll or shall be exempt by law, together with its surplus profits or reserve funds exceeding ten per centum of its capital, after deducting the assessed value of its real estate, and all shares of stock in other corporations actually owned by such company which are taxable upon their capital stock under the laws of this state, shall be assessed at its actual value."

Under this provision, it was the duty of the commissioners to ascertain the actual value of the real estate and personal property of the corporation, up to the amount of the par value of the stock issued, and then the surplus profits or reserved funds that have been accumulated, in addition, which exceed 10 per cent. of its capital stock, shall also be assessed at its actual value and in the same manner. People v. Barker, 165 N. Y. 339, 59 N. E. 137, 151. The actual value of the real and personal property of this corporation was found by the commissioners to be $46,462,144. To that valuation there seems to have been no objection. In addition to this, there was the actual value of the leases of the property, excluding the value of a lease of the franchises of the lessor corporation, and from that property the relator was entitled to a deduction of $46,938,030. The commissioners, however, instead of ascertaining the value of these leases, estimated the value of the real estate and personal property leased by these two lessor corporations to the relator, and included that in the amount of the property of the corporation. This, we think, was upon an incorrect basis. There was no finding by the tax commissioners or by the court below as to the value of these leases, and in such a case we think the proceedings should be sent back for a reassessment, so that the value of these leases, deducting therefrom the value of the right to use the franchises of the leased corporations, should be ascertained and added to the value of the real estate and personal property of the relator, and from this total making the deductions which are allowed by the statute. As this court has the power to send the proceedings back for a reassessment (People v. Barker, 165 N. Y. 319, 59 N. E. 137, 151), we think that this is the disposition that should be made of this case.

The court below held that certain outstanding bonds of the Albany & Susquehanna Railroad Company, aggregating about $10,000,000, which are secured by the consolidated mortgage of that company, were issued in pursuance of an agreement made in connection with the lease, and were original obligations of the relator for which it is primarily and originally liable, and that such liability is not on account of any indirect liability of surety, grantor, indorser, or otherwise. We do not think that this was correct. The statute provided that no deduction shall be made in the assessment of personal property by reason of any indebtedness of the owner for or on account of

any "indirect liability as surety, grantor, indorser or otherwise." $377,000 of this $10,000,000 of bonds was issued in exchange for bonds previously outstanding, and none of these bonds were issued to the relator. The balance, about $9,000,000, was issued directly to the relator,—$3,073,000 in exchange for outstanding bonds which it had purchased, and $6,550,000 in payment for sums expended by it in construction work upon the property. These bonds were not, when issued, obligations of the relator, but were obligations of the Albany & Susquehanna Railroad Company, and secured by a mortgage upon the property. When the relator sold these bonds, it guarantied the payment of the principal and interest thereon, but that guaranty did not make the relator the principal debtor. Whether it actually paid the holders of the bonds the interest, or paid that sum to the Albany & Susquehanna Company, in order to enable them to pay, it was paid as part of the rent reserved by the lease of the property of the Albany & Susquehanna Company. Under that lease the relator had the right to receive from the Albany & Susquehanna Railroad Company new bonds for any of these bonds it was compelled to pay. And, should it pay one of these bonds under this guaranty, there would arise at once an obligation on behalf of the Albany & Susquehanna Railroad Company to repay such bond. It certainly cannot be said, however, that this obligation to pay the principal upon these bonds is an original obligation, or anything more than a guaranty of the obligation of the Albany & Susquehanna Railroad Company to pay the bonds.

The order appealed from is therefore so modified as to vacate the assessment, and order a reassessment by the tax commissioners, with costs of this appeal to abide the final determination of this proceeding. All concur.