The case has never been noticed for trial, and, junior issues having been reached and tried in their regular order, defendant moved to dismiss the complaint for lack of prosecution, as provided for by section 822 of the Code of Civil Procedure and rule 36 of the general rules of practice. The only excuse offered by the plaintiff's attorney is that his client had settled and compromised the claim, and, indeed, the answer, verified on the 2d day of March, 1904, alleges compromise of the claim and the execution and delivery by the defendant of a general release.

It is suggested that, in spite of the fact that the plaintiff's attorney has taken no steps in the action since the joinder of issue and made no move for the purpose of enforcing his lien, the case ought to be kept upon the calendar and treated as a live issue, solely for the attorney's protection. There seems to be no good reason for this. The attorney's rights, if he had any, accrued upon the compromise and settlement of which he was advised by the answer served. The facts do not differ essentially from those passed upon by the learned Appellate Division in the Second Department in Russo v. Darmstadt, 116 App. Div. 887, 102 N. Y. Supp. 209; and for the reasons there stated the order appealed from should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs.

---

(121 App. Div. 661.)

PEOPLE ex rel. METROPOLITAN ST. RY. CO. v. BARKER et al., Tax Com'rs.

(Supreme Court, Appellate Division, First Department. October 25, 1907.)

1. TAXATION—CORPORATIONS—CAPITAL STOCK.

Tax Law, Laws 1896, p. 802, c. 908, § 12, provides that the capital stock of every company liable to taxation, etc., after deducting the assessed value of its real estate and all shares of stock actually owned by such company in other corporations which are taxable on their capital stock, shall be assessed at its actual value. *Held* that, where a street railway company leasing property from other companies paid taxes on the property of the lessor companies as part of the rent, it could not be compelled to again pay taxes based on the fee value of the leased property.

2. SAME—LEASES.

In valuing the interest of a lessee in leased property for taxation, the value of the lease to the lessee is to be ascertained, and not the value of the property leased.

3. EVIDENCE—ADMISSIONS—CORPORATE OFFICERS.

Where the value of property of a corporation on a certain date was in issue for purposes of taxation, a speech of the president of the corporation at a meeting of the stockholders, made several years thereafter, wherein he commented on the profits the corporation had realized, was not admissible in evidence.

4. SAME—VALUE OF PROPERTY—TIME OF VALUATION.

Where the value of the property of a corporation at a certain date was in issue for purposes of taxation, evidence of actual results in the way of profits, ascertained years after such date, was incompetent.

5. TAXATION—ASSESSMENT—CORPORATE PROPERTY—LEASED PROPERTY.

The fact that property of corporations leased to another corporation was assessed at a sum considerably less than the actual value of the property did not justify an assessment against the lessee corporation for the difference between the actual and the assessed value of the property.

6. SAME—RAILROADS—DEDUCTION OF INDEBTEDNESS.

Tax Law, Laws 1896, p. 800, c. 908, § 6, provides that no deduction shall be allowed in the assessment of personal property by reason of the indebtedness of the owner contracted in the purchase of nontaxable property, etc. By Railroad Law, Laws 1890, p. 1104, c. 565, § 72, as amended by Laws 1891, p. 706, c. 362, all property of certain railroad corporations, merged under the statute in another railroad corporation, was by operation of law vested in the new corporation. Section 73 imposed on the new corporation an obligation for all debts of the old corporations. *Held*, that there was no purchase of property by the new corporation, and that it was entitled to have deducted from its assessment for taxation the amount of the existing obligations assumed by it and represented by bonds secured by mortgages.

Appeal from Special Term.

Proceeding by the people, on the relation of the Metropolitan Street Railway Company, against Edward B. Barker and others, tax commissioners, to vacate an assessment for taxation. From a final order vacating the assessment, defendants appeal. Affirmed.

Argued before INGRAHAM, LAUGHLIN, CLARKE, and LAMBERT, JJ.

William L. Turner, for appellants.
Joseph P. Cotton, Jr., for respondent.

INGRAHAM, J. There are two questions presented upon this appeal—one relating to the amount of the total capital stock of the company liable to taxation under section 12 of the tax law (chapter 908, p. 802, of the Laws of 1896); and the second relating to certain deductions allowed by the Special Term from the amount of such capital stock, which the defendants claim should not have been deducted under section 6 of the tax law. The referee's report fixed the total value of the taxable assets of the relator on the second Monday of January, 1887, at $14,575,803.27. This consisted of tracks in the street, real estate other than tracks in the street, personal property other than shares of stock in other corporations which are taxable upon their capital stock, and shares of stock in other corporations taxable upon their capital stock. In addition to this property the referee found that the relator was lessee of the franchises to operate certain other street surface railroads in the city of New York, of the tracks used in connection with the same, and of certain real estate abutting on public streets in which such franchises were enjoyed which were essential to the operation of the roads demised. There were nine street railroad lines then specified as the lessor companies, and the leases under which the relator controlled these lines were introduced in evidence. The actual value of the tracks in the streets of the city essential to the beneficial enjoyment of the franchises of the lessor companies, and which were in actual possession by the relator under the various leases, was found by the referee to be $3,914,221; that there were also demised by the said leases and held by the relator under the leases certain real property owned by the lessors, but which were used by the relator in the operation of the leased railroads, and that the difference between the actual and assessed value of the said property was $3,917,800; and in addition to that there was included in the

lease certain personal property necessary to the operation of the respective roads, consisting of cars, plows, wagons, harness, and horses, of the value of $865,950. The learned referee made no finding as to the value of these leases to the lessee company, but found that:

"Eleventh. No testimony has been given before me tending to show that the several leases referred to in the preceding third finding, or any of them, had on the second Monday of January, 1897, any value in excess of the rent reserved therein."

Under section 12 of the tax law, what was to be taxed was the capital stock of every corporation liable to taxation, after deducting the assessed value of its real estate, and all shares of stock in other corporations actually owned by such company which were taxable upon their capital stock under the laws of this state. It is quite evident that the interest of the lessee in the leased property had no relation to the actual value of the property leased, and the value of the leased property to the lessee could not be based upon the actual value of the property, title to which was in the lessors. The lessor companies owned the property. The lessee company, under the leases, had the right to the possession and use of the property; but for that possession and use they were compelled to pay the rental reserved by the leases. It is apparent that if the rental exceeded the amount realized from the operation of the leased property, and so long as that condition continued, the leases would be valueless to the lessee company. On the other hand, if the profits realized from the operations of the company exceeded the rent paid, the leases would be worth to the lessee company just the amount of the excess over the rent paid. The fee value of the leased property was assessed to the owners of the property, the lessor companies, and upon such value of the property the lessor companies were liable for the tax. As part of the rent reserved, this relator paid such taxes assessed upon the property of the lessor companies, and to compel this relator to again pay taxes based upon the fee value of the leased property would be double taxation.

The interest of the lessee company, however, was presumably of some value, and that value, if ascertained, should have been charged as property belonging to the relator which was subject to taxation. But it was the value of these leases to the lessee on the second Monday of January, 1897, that was in controversy, and the defendants were required to fix the actual value of the leases as the property of the relator subject to taxation. The actual value of the leases was to be ascertained, as is the actual value of other property when required to be ascertained in a judicial proceeding. It could not be assumed that property of this character, which necessarily depends upon the amount that can be realized from it and the amount of rental which the lessee company is bound to pay, was of any definite value; and the usual method in ascertaining the value of such property is the evidence of those who are familiar with the value of similar property and can testify as to its value. Whether these leaseholds had an actual value to the lessee company or not was a question which had to be determined from the evidence, and in this record there is no evidence to justify this court in reversing the determination of the Special Term that these leases had no definite value on the second Monday of January,

1897, the day upon which this assessment was to be ascertained and fixed.

The question as to the method to be adopted in valuing the interest of a lessee in the leased property was presented to this court in People ex rel. D. & H. Co. v. Feitner, 61 App. Div. 129, 70 N. Y. Supp. 500 (affirmed 171 N. Y. 641, 63 N. E. 786, where the opinion of this court was approved and adopted by the Court of Appeals), and we held that it was the value of the leases to the lessee that was to be ascertained, and not the value of the leased property. It was there said:

"In fixing the value of the leases, the commissioners had the right to consider the nature of the estate granted to the relator, its duration, and the profit, if any, that it acquired in operating the lessor railroad, deducting, however, the value of the right acquired by the lessee by a lease of the franchises of the lessors, as under the act in question the franchise cannot be valued or included in the assessment; it being taxed under another statute."

The learned counsel for the corporation calls attention to a speech of the president of the relator at a meeting of the stockholders of the company, made several years after the second Monday of January, 1897, in which he comments upon the profit that the relator had realized from the operation of these leased roads. I do not think, however, that this statement of the president of the company was competent evidence as against the relator; nor do I think the actual results, ascertained years after this date, was competent evidence as to the value of the property on the second Monday of January, 1897. The question had to be determined as to the actual value of the interest of the lessee company in these leases at that date, and whether the value was greater or less several years afterwards has no relation as to the value of the leases at the date at which it was to be ascertained and assessed against this relator. It seems to me, therefore, that the court below was clearly right in refusing to affix any value to these leases as property of the relator which was subject to taxation.

The learned counsel for the corporation claims that as the real property of the lessor companies was assessed to those companies at a sum considerably less than the actual value of the property, and as this relator was compelled to pay those taxes, the difference between the actual value of the property of the lessor corporations and the amount at which it was assessed to those corporations should be charged against the relator. But in assessing the capital stock of the lessor companies it was the duty of the defendants to assess as part of its capital stock subject to taxation the difference between the actual value of its real property and the amount at which its real property was assessed. Upon no principle could that amount be charged as against the lessee company, any more than could be charged the actual value of the leased property as a basis for an assessment against the lessee; and if the defendants have allowed these lessor companies to escape taxation by an inadequate assessment, it cannot be remedied by an illegal assessment upon the lessee company.

The remaining question depends upon the confirmation by the Special Term of the fourteenth and fifteenth findings of fact of the referee, as modified by the Special Term, by which there was deducted from the assessed value of the relator's property liable for taxation the sum

of $20,300,754.69, less $10,500,000, which the referee held should be
deducted, but which the Special Term held should not be deducted.
The amount of the indebtedness which the Special Term deducted
amounted to $9,800,000. This indebtedness was represented by bonds
secured by mortgages upon the franchises and roads of certain railroad
companies which had subsequently by merger and consolidation under
the statute become this relator. Under the statute certain railroad
corporations were allowed to merge, and upon a merger agreement
being executed a new corporation was created, and the constituent
corporations that had been merged in the new corporation were, ex-
cept for certain special purposes, dissolved. By section 72 of the
railroad law (chapter 565, p. 1104, of the Laws of 1890, as amended
by chapter 362, p. 706, of the Laws of 1891) all property of the con-
stituent companies was by operation of law vested in the new corpora-
tion, and by section 73 of the railroad law there was imposed upon
the new corporation an obligation for all debts of the corporation that
had merged into and become the new corporation. By section 73 of
the railroad law it is provided that:

"All debts and liabilities incurred by either of such corporations shall
thenceforth attach to such new corporation, and be enforced against it and its
property to the same extent as if incurred or contracted by it."

It cannot be disputed, and I do not understand that the corporation
counsel does dispute, that by operation of law upon the merger or
consolidation these bonds and obligations of the constituent companies
became debts of the new corporation created by the merger and ex-
tinction of the consolidating corporations. But he claims that that
indebtedness was contracted in purchasing nontaxable property, name-
ly, the franchises of these constituent consolidating corporations, and
therefore were not to be deducted under section 6 of the tax law, to
which attention has been called. It seems to me clear, however, that
there was no purchase of property, either taxable or nontaxable. The
consolidating corporations had issued their bonds, not for the purchase
of franchises, but for the purpose of constructing the roads and ac-
quiring necessary property for operating them. When a railroad,
being indebted for property purchased by it and used in the transac-
tion of its business, became consolidated with another railroad, where-
by a new corporation was created, in whom was vested the property
purchased by the proceeds of the bonds, and upon whom was imposed
the obligation of paying for those bonds, it seems to me that the new
consolidated corporation was not in the position of a purchaser from
the consolidating companies, but stood in exactly the same situation
towards the property and towards its creditors that the consolidating
companies had occupied. It became the owner of the property, not
by purchase, but by operation of law, as succeeding to the rights of
the consolidating companies, which by the consolidation had ceased to
exist. There was imposed upon it, because of its relation to the con-
solidating companies, an obligation to pay the indebtedness of the con-
solidating companies. It was in the nature of a transmission of prop-
erty and indebtedness, and not in any sense a purchase of property in
consideration of the assumption of an obligation. A purchase of

property and an assumption of obligation implies consent upon the contracting parties; but in this case there was no agreement to purchase the property and to pay for it by any obligation to the vendor or its creditors, but a vesting of property under the statute, and a devolution of obligation, also, under the statute, resulting from the merger of the corporations. And after the completion of that transaction the new corporation stood in exactly the same relation to the property and to the creditors as did the corporations which had become merged into it. I think, therefore, there was lacking the essential elements of a purchase of property by the new corporation, and that, as it is conceded that the new corporation became indebted to the holders of these obligations issued by the consolidating corporations, it seems to follow that the Special Term was right in holding that the amount of the existing obligations should be deducted from any property belonging to the corporation which was liable to taxation.

As this presents the only questions submitted upon this appeal, it follows that the order of the Special Term should be affirmed, with $10 costs and disbursements. All concur.