[Civ. No. 3962.   Second Appellate District, Division One.—September 20, 1922.]

A. OTIS BIRCH et al., Copartners, etc., Appellants, v. COUNTY OF ORANGE, Respondent.

[1] TAXATION—FRAUDULENT ASSESSMENT.—An assessment for taxation purposes which is grossly inequitable and palpably excessive may be considered fraudulent.

[2] ID.—JUDGMENT OF ASSESSING OFFICERS—CONTROL BY COURTS.—The assessor and the board of equalization exercise judicial functions and within the limits of a reasonable discretion their judgment cannot be controlled by the courts.

[3] ID.—VALUATION OF PROPERTY—DETERMINATION OF ASSESSING OFFICERS—CONCLUSIVENESS.—The conclusion of assessing officers as to the value of property for purposes of taxation when honestly arrived at and when not made in pursuance of some fixed rule or general system, the result of which is necessarily discriminatory

and inequitable, is conclusive on the courts, however erroneous the conclusion may be.

[4] ID.—METHOD OF VALUATION—ABSENCE OF FRAUD—RELIEF.—Where an assessor in making an assessment for the purpose of taxation did not adopt a method of valuation so out of relation with the factors that should enter into a fair consideration of the matter of value as to cause the assessment to be discriminatory and not just when compared with assessments entered against other property of similar kind, and the board of equalization affirmed the assessment, the court cannot set such assessment aside, in the absence of a showing of actual or constructive fraud, even though a better method of valuation might have been followed.

APPEAL from a judgment of the Superior Court of Orange County. Rex B. Goodcell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Woodruff & Shoemaker for Appellants.

L. A. West and Alex P. Nelson for Respondent.

JAMES, J.—Plaintiffs brought this action to recover the sum of $11,173.86, which amount they alleged had been paid to the tax collector of the county of Orange under protest. Incidental to that recovery the court was asked to set aside an assessment valuation entered by the county assessor against the plaintiffs' property for the year 1918 as to all amounts in excess of $150,000. A judgment of nonsuit was granted, from which plaintiffs, have appealed.

Plaintiffs, as copartners, owned 20.16 acres of land in the county of Orange, upon which there were, during the year 1917–1918, nine or ten wells producing crude petroleum. As a by-product of the wells gas was also marketed, which increased the income. Surrounding this property were various other oil-producing lands, notably those owned by five corporations. Some of these latter were, in 1918, producing more, but the majority less, oil than were the wells of plaintiffs. The plaintiffs alleged in their complaint that the assessment levied against them for the year mentioned as for their real property, totaling a valuation of $569,615, was disproportionate and not uniform with the valuation placed upon other oil-producing property of similar kind and similarly situated; in other words, that their

constitutional right to have equal protection of the laws had been invaded. The examples used for comparison were properties of the several oil corporations referred to hereinbefore. The method adopted by the assessor in arriving at his total figures is characterized as being arbitrary and as not being one from which fair valuation results may be deduced. The plaintiffs admit that the actual value of their property was in excess of the total valuation given to it by the assessor. However, as the assessor used but forty per cent of his valuation total in making up the tax-roll, it appears that his base figures exceeded by $674,037 the amount claimed by plaintiffs to represent the value of their property. They presented an application for a reduction of the assessment to the county board of equalization in July, 1918. This application, it is conceded, conformed to the requirements of section 3674 of the Political Code. It set forth as the particular grounds that the "assessed value of said property is unfair, unjust, and excessive as compared with other property of substantially the same character and value and similarly situated in said county and imposes an unequal burden upon the applicant," and that the assessment was "arbitrary, discriminatory, oppressive, erroneous, and illegal." After a full hearing, at which considerable evidence was heard, the application was denied. The claims made at the hearing before the county board of equalization were the same as those here urged, and comparison of values was called for in the assessment figures touching plaintiffs' property and that of the neighboring oil companies hereinbefore referred to.

These same plaintiffs were in court heretofore, making substantially the same claims with respect to the assessment of the same property for the year 1917. (*Birch et al. v. Orange County,* 186 Cal. 736 [200 Pac. 647].) In that case neither the method used by the assessor nor the resulting assessment figures were the same or similar to those exhibited in this record. It was shown in that case that plaintiffs' assessment was greater than the combined assessment of the four (adjoining) oil companies, when the latter were producing monthly 215,608 barrels of oil and the plaintiffs only 44,686 barrels per month. The court held that the disparity was so great as to substantiate the claim

of constructive fraud and reversed a judgment against the plaintiffs.

The law as it regulates the making of assessments and the securing of relief to a taxpayer is quite fully expounded in that decision and in the decision found in *Los Angeles Gas & Elec. Co.* v. *County of Los Angeles,* 162 Cal., at page 164 [9 A. L. R. 1277, 121 Pac. 384], referred to in the following. [1] It is clear by the decisions that an assessment "grossly inequitable and palpably excessive" may be considered fraudulent. [2] At the same time, it is recognized that both the assessor and the board of equalization exercise judicial functions and that within the limits of a reasonable discretion their judgment cannot be controlled by the courts. (Judson on Taxation, secs. 464, 472, 473; 2 Cooley on Taxation, 3d ed., p. 1467.) [3] "It is not disputed that the conclusion of assessing officers as to the value of property for purposes of taxation, when honestly arrived at and when not made in pursuance of some fixed rule or general system, *the result of which is necessarily discriminatory and inequitable,* is conclusive on the courts, however erroneous the conclusion of those officers may be. The law necessarily leaves the determination of the question of fact of value to certain officers, and when it appoints tribunals for that purpose, as in this state primarily the assessor, and, for purpose of review, the board of supervisors acting as a county board of equalization, the conclusion of those tribunals on such a question of fact constitutes a judgment. . . ." (*Los Angeles Gas & Elec. Co.* v. *County of Los Angeles,* 162 Cal. 164 [9 A. L. R. 1277, 121 Pac. 384].)

Attention has been called to the fact that plaintiffs were accorded a hearing before the county board of equalization. They were accorded a full hearing and allowed to introduce all evidence that they wished to offer. This included the testimony of the assessor, and evidence as to the amounts of the assessments made against adjoining oil properties. It was shown by that evidence that the assessor for the year in question used precisely the same method in arriving at his total valuations against the several companies. There was some small difference in the allowances made as for production cost and value of the wells, but the assessor gave his reasons for making the difference,

and those reasons were sufficient to support his judgment in the matter.

In arriving at the total amount of his assessment, the assessor first ascertained the number of barrels of oil produced by the plaintiffs during the preceding year, which was found to be 342,570. He estimated a sale value of one dollar per barrel (that amount was admitted by plaintiffs to be reasonable), allowed sixty-five cents per barrel as cost of production, leaving a remainder of thirty-five cents which he classed as net income. This he multiplied by the number of barrels produced, which gave him his total net income for oil. He then ascertained the quantity and value of gas commercially produced during the year, allowed twenty-five per cent off for cost of production, added the remainder to the oil total. Having then a total net income amount he "capitalized" the mineral and gas value by assuming that a net ten per cent return was being made to the operators. Multiplying his net income by ten and taking forty per cent thereof as the basis for taxation, he secured a total of $529,643. He added a nominal $100 for surface value of ground and added $39,900 as the value of the wells, approximating $3,000 for each well. The latter amount he estimated to be the fair value of the well casing in a producing hole. The amount resulting from this computation was $569,615. Respondent has tabulated the production figures for the year preceding March, 1918, and the assessment total assigned in each case. As a result it is found that plaintiffs' and the properties of the neighboring oil companies, under the method used by the assessor, were valued as follows:

Birch Oil Company............342,510 bbls.   $529,715.00
Fullerton Oil Co..............350,700 bbls.    431,240.00
General Petroleum Co..........242,269 bbls.    276,270.00
Brea Canyon Oil Co............288,229 bbls.    413,700.00
Columbia Producing Co.........277,565 bbls.    462,965.00
Union Oil Co. of Cal..........730,969 bbls.  1,300,520.00

Answering the argument that the capitalization method as used by the assessor is not designed to produce reasonably accurate results, as compared with the market value of the property assessed, it sufficiently appears from the evidence presented that the ascertainment of the value of the producing oil properties is one of great difficulty, so many

and various are the elements which enter into that value. Actual experience may prove that a producing oil property may increase or diminish in value; production quantity may become lessened or the price of the product may be reduced accordingly as the market for petroleum fluctuates with variations in demand and supply. No one can ever foretell when such variations may occur, how great they may be, or how long they may continue. Value then becomes a matter of opinion to a large extent, and may be based upon an estimate of the reasonable production probabilities of the property under consideration. It has long been the accepted practice of assessing officers to use an income amount mathematically ascertained as a basis for estimating the value of the property which produces the income. We find the method extensively used in the appraisement of corporate stocks. The circuit court of the United States in *Chicago Union T. Co.* v. *State Board of Equalization,* 112 Fed. 607, approved the method as being legitimate and fair. Such a method, the court said, was a reasonable one to employ in arriving at the value of "the beneficial ownership of everything that enters into the property of the corporation." In the case cited the income was estimated to produce a rate of six per cent on capital. Mathematically considered, the higher the rate the less the estimated capital value. The assessor here took one-tenth or ten per cent as his income multiplier. It is not demonstrated in this case that the percentage adopted resulted in the property being assessed at an amount disproportionate to its value or the assessed value of other property of like kind and similarly situated. The physical merchandise constituting the "well" necessarily had to be separately listed (Pol. Code, sec. 3617) as personal property. The value of the casing in the "hole" depended in part upon its condition and the possibilities of its being salvaged in event that the well was abandoned. The assessor necessarily had to approximate that value, having little to guide him except the current cost of casing and the length of time the particular casing had been in use. He testified that whenever old casing stood in an abandoned well he treated it as valueless; where the casing was in a producing "hole" and doing duty, he assessed it as indicated. There was no evidence offered to show that the casing itself, if removed from the wells, might

not have been worth in the market all that the assessor valued it at. Some of the "wells" of the adjacent oil operators were assessed for $2,500, others for $3,000, some at more and some at less, but, as has been mentioned, the assessor gave substantial reasons for making the difference. Having determined that the assessor did not adopt an unauthorized method in arriving at the value of plaintiffs' property for assessment purposes, it at once is apparent that the court committed no error in sustaining objection to questions asked of a witness by whom it was proposed to show the various factors that should be considered in estimating the value of oil-producing property.

[4] The entire cause of complaint of the plaintiffs is answered with the statement that the assessor did not adopt a method of valuation so out of relation with the factors that should enter into a fair consideration of the matter of value as to cause plaintiffs' assessment to be discriminatory and not just when compared with assessments entered against other property of similar kind. Conceding that a better method might have been used, the result is still the same. The assessor exercised a permitted discretion in making up his assessment figures. He treated all similar properties as he did that of plaintiffs. The board of equalization heard and fully considered plaintiffs' application for adjustment and with the testimony offered and the evidence of the tax-roll before it affirmed the assessment. The courts are not empowered to make a more extensive review than to ascertain that the acts of the assessor and board of equalization are not open to the charge of fraud, actual or constructive.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 16, 1922.

All the Justices concurred.