[Civ. No. 7235. First Appellate District, Division One.—February 27, 1930.]

HAMMOND LUMBER COMPANY (a Corporation), Appellant, v. THE COUNTY OF LOS ANGELES, Respondent.

236

R. L. Horton, Horton, Anderson, Horton & Armstrong, Joseph K. Horton, C. S. Anderson and M. M. Armstrong for Appellant.

Everett W. Mattoon, County Counsel, and W. Sumner Holbrook, Jr., Deputy County Counsel, for Respondent.

JOHNSON, J., *pro tem.*—Plaintiff has appealed from a judgment in favor of defendant in this action brought to recover the amount of a tax levied on plaintiff's possessory interest as a tenant of real property and paid under protest.

Since May, 1923, the plaintiff has been in possession of certain harbor lands, comprising about twenty-five acres, with a water frontage of about 2,500 feet, owned by the city of Los Angeles and rented by the city to plaintiff for use in plaintiff's lumber business under a permit in the nature of a lease running to June 3, 1951, the annual rental until June 3, 1931, being $8,060.88, payable in quarterly installments, and for succeeding decennial periods to be fixed either by the parties themselves or by arbitration.

In the year 1924 the county assessor assessed plaintiff's possessory interest in the land, apart from plaintiff's improvements, at $234,150, and plaintiff was required to pay as the tax on its possessory interest the sum of $8,780.62, based on the rate for the year 1923. Of this amount $374.64 was returned to plaintiff after a lower tax rate had been fixed for the year 1924.

Plaintiff paid the tax under protest, and thereafter in the month of July, 1924, applied to the board of supervisors, sitting as the county board of equalization, for a reduction of the assessment, on the ground that the possessory interest had been grossly overvalued and that the assessment and tax were discriminatory and inequitable. After hearing all the evidence which was offered, the board denied the application.

Thereafter, on January 7, 1925, plaintiff instituted this action, alleging that the rent designated in the permit was the full rental value of the premises and that the assessment on plaintiff's possessory interest was made, with clear knowledge and intent, grossly in excess of its full cash

value and really equaled the value of the fee. The plaintiff averred further that it had presented the facts to the board of equalization, but that board, in disregard of the evidence adduced, had arbitrarily and wilfully denied the application, and had intentionally imposed on plaintiff such an unfair and unequal burden of taxation as to amount to constructive fraud.

Upon the trial of the case the court, after hearing the evidence, made its written decision and its judgment in favor of defendant, finding among other things that the rent reserved was not the full reasonable rental value of the lands; that the assessment was not fixed at an amount representing the value of the fee and was not in excess of the cash value of plaintiff's interest; that the valuation was not made in furtherance of any scheme to impose an excessive tax, or to place an unequal burden on plaintiff, nor was the assessment or tax discriminatory, and that the action of the board of equalization in refusing to reduce the assessment was not arbitrary, oppressive or capricious, and did not constitute constructive fraud.

The plaintiff contends on this appeal that the evidence does make out a case of constructive fraud under the rules declared in *Los Angeles Gas & Elec. Co.* v. *County of Los Angeles,* 162 Cal. 164 [9 A. L. R. 1277, 121 Pac. 384], *Southern Pac. Land Co.* v. *County of San Diego,* 183 Cal. 543 [191 Pac. 931], and *Mahoney* v. *City of San Diego,* 198 Cal. 388 [245 Pac. 189].

A leasehold interest is in this state assessable as personal property under section 3820 of the Political Code. (*San Pedro etc. R. R. Co.* v. *County of Los Angeles,* 180 Cal. 18 [179 Pac. 393].) When land held in private ownership is leased, both the leasehold and the reversionary interest are ordinarily assessed together to the owner, the value of the lessee's estate being treated as a constituent of the valuation of the larger interest belonging to the owner of the freehold. Instead of splitting the interests, it operates fairly as a rule to make a single assessment against the lessor as the beneficial owner not only of the freehold, but also of all lesser estates, and the incidence of the tax then becomes a matter of agreement between the lessor and the lessee. Usually in the case of short leases the lessor pays the entire tax, and with such charge in view he fixes his

rent accordingly. (*Graciosa Oil Co.* v. *County of Santa Barbara,* 155 Cal. 140, 143, 144 [20 L. R. A. (N. S.) 211, 99 Pac. 483].) ▉ When, however, there is a lease of land owned by the state or a municipality, the reversion being exempt from taxation, the usufructuary interest alone is subject to tax in proportion to its value; and in the absence of agreement to the contrary, the tax necessarily falls upon the lessee. ▉ While the instrument executed between the plaintiff and the city of Los Angeles is denominated a "permit," it is not, as plaintiff asserts, a mere license. It grants to plaintiff for a fixed period the right to the exclusive use of the premises on prescribed terms. It embodies an agreement having all of the characteristics and qualities of a lease, and entitles plaintiff to the exclusive control and enjoyment of the premises for the full term specified, subject only to fulfillment of the terms and conditions expressed. On the termination of the tenancy improvements constructed by the occupant are to become the property of the city, but so long as plaintiff complies with its covenants, plaintiff remains secure in its possession throughout the agreed term.

The plaintiff took this grant of the exclusive possessory right in the lands, charged with knowledge that the interest so acquired would be subject to taxation under the laws of the state. ▉ The mere fact that an assessment, not discriminatory or inequitable on its face, is in excess of the fair value of the property assessed, is not in itself evidence of fraud. Hence mistakes or overvaluations honestly made are not grounds for refund of a protested charge. ▉ To invalidate the assessment there must be a conscious failure to exercise a fair and impartial judgment, or a resort to arbitrary methods varying from those employed in assessing other property of like character and situation, and resulting in the imposition designedly of an unequal burden on the property of the complainant. (*Los Angeles G. & E. Co.* v. *County of Los Angeles, supra; Miller & Lux* v. *Richardson,* 182 Cal. 115, 128 [187 Pac. 411]; *Pacific Coast S. S. Co.* v. *Richardson,* 186 Cal. 70, 72 [198 Pac. 1034]; *Pierce* v. *County of Santa Barbara,* 40 Cal. App. 302, 305 [180 Pac. 641]; *Birch* v. *County of Orange,* 59 Cal. App. 134, 136 [210 Pac. 57]; *Wild Goose Country Club* v. *County of Butte,* 60 Cal. App. 339, 342 [212 Pac.

711]; *Ambassador Hotel Corp.* v. *Los Angeles County,* 94 Cal. App. 143 [270 Pac. 726].)

In case a taxpayer feels aggrieved by reason of the assessor's valuation, the law provides for a determination of the facts by a tribunal sitting as a county board of equalization. When the assessment is not wholly void, it is to this tribunal that the taxpayer must first apply for relief, and the decision of the board, made after due hearing and within the limits of reasonable discretion, is final and conclusive. (*La Grange Co.* v. *Carter,* 142 Cal. 560, 565 [76 Pac. 241]; *California Domestic Water Co.* v. *County of Los Angeles,* 10 Cal. App. 185, 191 [101 Pac. 547]; *Pierce* v. *County of Santa Barbara,* 40 Cal. App. 302, 304 [180 Pac. 641]; *Globe G. & M. Co.* v. *County of Los Angeles,* 62 Cal. App. 297, 299 [216 Pac. 631].)

The decision of the board constitutes an independent and conclusive judgment which abrogates and takes the place of the judgment of the assessor, and even though there be mistake or error, the decision of the board will not be rejected upon review by the court, unless there is proof of actual fraud, or such arbitrary, unreasonable or grossly oppressive action, in wilful disregard of the law, as amounts to constructive fraud. (*Los Angeles G. & E. Co.* v. *County of Los Angeles, supra; Southern Pac. Land Co.* v. *County of San Diego, supra; Wores* v. *Imperial Irr. Dist.,* 193 Cal. 609, 627–629 [227 Pac. 181]; *Birch* v. *County of Orange,* 186 Cal. 736, 741, 742 [200 Pac. 647]; *Mahoney* v. *City of San Diego,* 198 Cal. 388, 397 [245 Pac. 189].)

Plaintiff followed the requisite procedure in applying to the board of equalization for reduction of the assessor's valuation, but met with no success. No charge is made of any actual fraud or malicious abuse of power on the part of either the assessor or the board of equalization, but it is earnestly contended that the assessment is so grossly excessive and discriminatory as constructively to constitute fraud. The assessment not being wholly void, this action, though cast in the form of an action to recover a tax paid under protest, is properly a proceeding to review the decision of the board of equalization. The function of the trial court, therefore, was to determine whether a correct method of valuing the usufructuary interest was pursued, and whether there was substantial evidence before the board

in justification of the assessment made. The plaintiff was represented at the hearing before the board by its attorney and by its general manager, Mr. McLeod, together with its real estate appraiser, C. S. Anderson. The interest of the county was represented by the assessor, E. W. Hopkins, and his deputy, S. R. McClay. Mr. Anderson and Mr. McLeod insisted that the possessory interest had no value in excess of the rent reserved, and that the assessor's valuation was equivalent to the full value of the land to the city. After these witnesses had been heard Mr. McClay gave his testimony as to the method used by the assessor in making his assessment. The method was that known as the capitalization method. The deputy assessor stated that in arriving at the value of the leasehold interest, the land itself was first taken at a valuation of $13,000 per acre, which corresponded with the value of surrounding property; then the annual average rent per acre, representing the income from the investment, was capitalized on the basis of an annual interest return of six per cent, and the difference between the value of the land and the capitalized rent charge or income represented the average value of the possessory interest per acre. This value was then multiplied by the number of acres, and in accordance with the usual practice in assessing property in general, one-half of the amount so arrived at was adopted as the assessed valuation of the leasehold interest.

It appeared also from McClay's testimony that, under a new schedule of rents adopted by the city, leases of similar lands had been made subsequent to plaintiff's lease at much higher rentals.

The assessor admitted that it was not his practice to assess leasehold interests separately when the land itself was subject to taxation, but with regard to other harbor leases made by the city it appeared that they were dealt with in the same manner as plaintiff's lease.

After hearing all the evidence presented the board refused to make any change in plaintiff's assessment.

The proceedings before the board were rather informal in character and the plaintiff had, and exercised, full freedom in questioning the witnesses and commenting on their testimony as it was given. No complaint can justly be made of any arbitrary or malicious abuse of power. If the

capitalization method is a reasonably fair and accurate method of appraising the value of a leasehold interest it is apparent that the determination of the board of equalization, as the sole judge of the facts, must be accepted as controlling. (*Miller & Lux* v. *Richardson,* 182 Cal. 115, 128 [187 Pac. 411]; *Pacific Coast S. S. Co.* v. *Richardson,* 186 Cal. 70, 72 [198 Pac. 1034].) Hence the question before the trial court was not whether, through some miscalculation, mistake or oversight, there had been an erroneous valuation, but whether the method pursued had resulted in an overcharge so disproportionate and exorbitant as to produce an illegal assessment and tax.

At the trial the evidence was not limited strictly to this question, and, over the objection of defendant, much opinion evidence was received on behalf of plaintiff as to the fair market value of the lease. The plaintiff called as witnesses a number of real estate brokers, some of whom specialized in leases of industrial sites, but without having had actual experience in waterfront properties. These witnesses in general expressed the opinion, voiced by plaintiff's witnesses before the board of equalization, that the rent payable was the full market value of the use and in consequence the lease had no salable or ''bonus'' value. One of plaintiff's witnesses, however, W. H. Daum, when asked by the trial judge how he figured the value of a lease, indicated that the capitalization method should be followed. ''The value of a lease to my opinion,'' he said, ''can be arrived at only in one way. All of the costs of occupancy to a tenant must be carefully set down on one side of the ledger, the value of that occupancy on the other side of the ledger, and in so much as the value of occupancy exceeds the cost of occupancy can we capitalize it; a reasonable sum of all the various conditions of occupancy being taken into consideration, that sum capitalized being the difference between the two. Q. What do you mean by 'capitalize'? A. Capitalizing at a reasonable percentage in return that is justified by the uses which may be made in the particular business occupancy under consideration.''

The witness then went on to say that he attached no ''bonus value'' to this particular lease, because it limited the use of the land to the purposes of a lumber business

instead of extending a privilege for any sort of commercial use.

In support and explanation of the rule applied in the valuation of leasehold interests the county relied upon the testimony of Milton W. Moore, who became a deputy county assessor in 1925, and began to give his attention to the harbor district in 1926. Between 1903 and 1915 he had acted as right of way and tax agent for railroad companies, some of which had waterfront properties in Tacoma, Seattle and Vancouver. And in 1915 he had entered the service of the Interstate Commerce Commission as senior land appraiser, with duties which had required appraisal of waterfront properties in Oakland and elsewhere. He had had practical experience also as a real estate broker, both in southern and northern California. His testimony showed that for several months he had given close study to the valuation of the harbor properties of the city of Los Angeles and the leases thereof, as well as other leasehold interests throughout the county. This witness fixed the value of the leasehold interest of plaintiff for purpose of assessment on the first Monday of March, 1924, at $204,650, taking into consideration the limitation of use to plaintiff's lumber business. He described his method of procedure in detail, stating that he first determined what he called a base value representing the present worth of a right in perpetuity to the lands, subject to the privileges and limitations of the lease. He then calculated the annual return that an owner might reasonably expect from property so valued at the rate of seven per cent, and the difference between such amount and the annual rent represented the annual benefit or saving to the lessee. To ascertain, however, the savings or bonus value on the first Monday of March, 1924, the savings of future years had to be reduced to present worth. So by a process which need not be followed here with particularity, the witness figured the full market value of the leasehold interest at $409,313, one-half of which amount, or roughly $204,650, was taken as the ''full cash value'' for taxation purposes. The witness in his testimony thus demonstrated the application of the capitalization method, which in *Birch* v. *County of Orange,* 59 Cal. App. 133, 138, 139 [210 Pac. 57], was pronounced to be a fair and reasonable method of valuing a beneficial interest. (See, also, *Graciosa Oil*

*Co.* v. *County of Santa Barbara,* 155 Cal. 140, 143, 144 [20 L. R. A. (N. S.) 211, 99 Pac. 483].)

In McMichael's "Long and Short Term Leaseholds" it is said (2d ed., pp. 90, 91): "A property, whether held in fee simple or as a leasehold, is usually worth what it will earn, the net amount of earnings being capitalized at the rate of interest prevailing at the time and place the lease is appraised. That percentage is usually six, but fluctuates up and down, according to the price of money, and other market conditions, such as the demand for that particular type of investment. . . . The value of the lease is the difference between burdens and benefits. The burden of rental is known and the burden as to taxes may be approximated. . . . Strictly speaking, to get at the value of a lease involves striking a balance of theoretical receipts and expenses for each present and prospective year of the lease and taking the present worth of future profits."

Again, Zangerle, inheritance tax appraiser of Ohio for the opulent county of Cuyahoga, in his "Principles of Real Estate Appraising," says (p. 31): "Short term leases such as 20, 30, 40 or 50 years must be appraised on the present worth of an annuity." This is supplemented by the following statement at page 150: "In other words, the present worth at 6 per cent of an accumulating dollar for a given number of years multiplied by the annual rental gives the full present worth value of the usual lease for a short and definite time." And in chapter 23, on Appraisal of Leasehold Estates, he says further (p. 148): "In a number of cities, as in Cleveland, on the main thoroughfares, few outright sales have taken place during the last ten years. An assessor determining the general property tax, as well as the appraiser for investment purposes, is compelled to obtain his evidence of capital value through a capitalization of land rentals under long-time leases. More and more the inheritance tax appraiser is called upon to appraise the interest of lessor, lessee, sublessee, fees subject to leases, and the like." The books from which we have quoted are standard reference books approved and indorsed by the National Association of Real Estate Boards, and they contain examples of the manner in which various kinds of leaseholds are valued by use of the capitalization method. Since that method is employed in appraising the values of leases in

the business world and in determining inheritance taxes, no good reason suggests itself against the adoption of the same rule of procedure, with due regard to other appropriate factors, as a lawful means of arriving at the assessable value of a lessee's possessory interest under the general tax laws of the state.

 There is no rigid rule for the valuation of property by an assessor. Different minds may be expected to differ honestly in their judgments. But after considering all the circumstances and the various factors influencing value, it is the assessor's duty to exercise a prudent discretion in reaching conclusions. (*New Orleans Cotton Exchange* v. *Board of Assessors*, 37 La. Ann. 423, 426.) And in determining the value of a lease, due consideration should be given to the nature of the estate granted, its duration and the profits arising from the use of the demised property. (*People* v. *Feitner*, 61 App. Div. 129 [70 N. Y. Supp. 500, 502], affirmed in Memo., 171 N. Y. 641 [63 N. E. 786].)

While the opinions of plaintiff's witnesses expressed in their statements to the board of equalization were competent evidence, such evidence was in no sense conclusive, and it was for the board to judge of the weight and value of the evidence on both sides. The board determined that the method pursued by the assessor was a correct method, and that his assessment was a fair and just valuation for purposes of taxation. The evidence before the trial court tends to confirm the judgment of the board, and supports the court's finding that plaintiff's interest was not assessed improperly, or in excess of its cash value, but only in proportion to the value of the possessory right.

The valuation placed on the plaintiff's interest at the trial by the witness Moore was somewhat lower than the amount of the assessment complained of, due mainly to the fact that the witness took into consideration certain additional charges of $1500 per year that would fall upon the plaintiff partly in 1926 and partly in 1930 for certain wharf franchises. No mention of these future charges was made before the board of equalization; and hence the omission to give consideration to that factor at that time casts no imputation upon the decision of the board. In the proceeding before the board the burden of proof was on the plaintiff, and the decision of the board upon the evidence adduced

cannot be collaterally assailed by new evidence on the point in a different tribunal. (*Wild Goose Country Club* v. *County of Butte,* 60 Cal. App. 339, 341 [212 Pac. 711].)

What has just been said applies with equal force to the contention that there was such gross inequality and arbitrary discrimination as to invalidate the assessment. At the hearing before the board it was admitted by the assessor that leasehold interests in land held in private ownership were not separately assessed, a single assessment in such case being made of the freehold with all lesser interests. ▮ There was, however, no evidence of any omission to assess separately possessory interests in other property exempt from taxation, and an assessment upon a leasehold estate in exempt property is not discriminatory because similar estates in unexempt property are not separately assessed. (*Chicago* v. *University of Chicago,* 302 Ill. 455, 461 [23 A. L. R. 244, 134 N. E. 723]; *Trimble* v. *City of Seattle,* 231 U. S. 683 [58 L. Ed. 435, 34 Sup. Ct. Rep. 218].) At the trial the assessor was asked whether in the year 1924 he had assessed the possessory interests of tenants in lands of the municipality other than harbor lands, and he stated that he had assessed all such possessory interests of which he had any knowledge. There was no countervailing evidence, though some unsubstantiated assertions were made by plaintiff's attorney. And there having been no showing of discrimination at the hearing before the board of equalization, there is of course no basis for any charge of wilful disregard of the law by the board or of the intentional or conscious imposition of any unfair or unequal burden of taxation. ▮ Even if other property of like character escaped taxation, such circumstance would not relieve plaintiff from paying a tax based on a proper assessment of its property. (*City of Los Angeles* v. *Western Union Tel. Co.,* 161 Cal. 204, 207 [118 Pac. 720].)

▮ Regarding the evidence given at the trial by the witness Moore, over the objection of plaintiff, it is insisted by plaintiff that Moore lacked competence to testify as an expert concerning the value of harbor lands, upon the ground that his connection with the assessor's office did not begin until October, 1925, and that the data which he had gathered consisted of information derived from hearsay sources. The witness, who was shown to have had a wide experience

in real estate transactions, described in much detail the investigations he had made in gathering his statistics relative to the Los Angeles harbor lands, and it is well settled that testimony as to market values is not incompetent because derived from published reports or from information acquired through others. The expert's testimony, though based on knowledge gained from inadmissible sources, is entitled to credit because of the added sanction of his general experience. (*Betts* v. *Southern California Fruit Exchange*, 144 Cal. 402, 409 [77 Pac. 993]; *People* v. *Marblehead Land Co.*, 82 Cal. App. 289, 303 [255 Pac. 553]; *Fishel* v. *Ball & Co.*, 83 Cal. App. 128, 134 [256 Pac. 493]; *Glantz* v. *Freedman*, 100 Cal. App. 611 [280 Pac. 704].)

In the complaint plaintiff averred that the assessment and tax were in contravention of the federal Constitution, and that plaintiff was deprived of its property without due process of law. The leasehold interest being assessable under the laws of the state, and the assessor having followed an approved method of valuation which, after ample hearing, was confirmed by a tribunal duly constituted by law, and the plaintiff having further invoked the revisory powers of the courts of justice, plaintiff has had its full day in court and has in no way suffered in any of its constitutional rights. In *Davidson* v. *New Orleans*, 96 U. S. 97, 104 [24 L. Ed. 616, see, also, Rose's U. S. Notes], it is said: "That whenever by the laws of a state, or by a state authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, whether it be for the whole state or of some limited portion of the community and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property, as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections."

This is not a suit in equity to enjoin collection of an excessive or illegal tax. And in the federal courts the rule is firmly established that when an action at law is brought to recover a tax, not wholly void, which was paid under protest, the determination of a *quasi*-judicial body, such as a board of equalization acting within its jurisdiction, operates as a

conclusive judgment. Even if such judgment is erroneous, the taxpayer, having had his hearing, can no more recover the amount paid thereunder than if it were money collected under an erroneous judgment of a court of competent jurisdiction. (*Balfour* v. *City of Portland,* 28 Fed. 738, 739; *Stanley* v. *Supervisors of Albany,* 121 U. S. 535, 550 [30 L. Ed. 1000, 7 Sup. Ct. Rep. 1234]; *Western Union Tel. Co.* v. *Missouri,* 190 U. S. 412, 426 [47 L. Ed. 1116, 23 Sup. Ct. Rep. 730].)

There is nothing in the evidence presented to the trial court indicating an arbitrary, discriminatory or fraudulent assessment on the part of the board of equalization, and the findings in favor of the fairness, correctness and validity of the assessment have ample support.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 29, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 28, 1930.