[Civ. No. 27835. Second Dist., Div. One. Aug. 31, 1964.]

BRUCE A. MICHELS, Plaintiff and Appellant, v. PHILIP E. WATSON, as County Assessor, etc., Defendant and Respondent.

Stanley Milton Sapiro, R. Edward Brown and Leon J. Garrie for Plaintiff and Appellant.

Harold W. Kennedy, County Counsel, and A. R. Early, Deputy County Counsel, for Defendant and Respondent.

LILLIE, J.—Defendant, Assessor of the County of Los Angeles, announced his intention to assess all property in the county at 25 per cent of its fair market value; plaintiff, a resident taxpayer and owner of a double-family dwelling, filed an action for declaratory relief to compel him to assess at full cash value. There were no oral proceedings before the trial court except argument. Determining the issues in favor of defendant, the judge concluded: ''Article XI, section 12, of the California Constitution does not prohibit the assessment of taxable property by a county at a uniform fraction of its full cash value.'' Plaintiff's appeal from the judgment comes to this court on an agreed statement.

The sole issue before this court is whether locally assessable tangible property may be legally assessed at a uniform fraction of its full cash value. Appellant contends that all property must be assessed at full cash value; respondent claims that constitutional and statutory provisions permit assessment of property subject to taxation at a uniform fraction of its full cash value as long as full cash value is the standard or basis of each assessment. In support of his position appellant has advanced extended argument based pri-

marily upon discussions found in numerous out-of-state cases; while it might be apposite and reasonable enough in the absence of controlling authority in California, or as an original proposition in the early stages of the administration of our revenue law, it is hardly persuasive now when, for almost a century, administrative, legislative and judicial authorities in this state have been in accord in the administration of our system of raising revenues to support local government. We seek neither to defend nor indict the property tax and its administration; our sole concern is with the legality of fractional assessments. It should be noted that while he criticizes at length the practice of assessing all property at a fraction of its fair market value, plaintiff has neither pleaded nor offered to prove that he has suffered or might suffer any detriment or discrimination as a result of assessment at 25 per cent or any other uniform fraction of the full cash value of his property. He claims that the only true way to achieve equality in assessment is by assessment at full cash value, but he has not complained of lack of equality in the assessment of his or any other property.

The following constitutional and statutory provisions set up the standard of valuation of property for assessment purposes for taxation in California.

Section 1, article XIII (previously contained in Const. of 1849, art. XI, § 13) adopted in 1879, provides: "All property . . . shall be taxed in proportion to its value, to be ascertained as provided by law. . . ." Section 12, article XI, adopted in 1933, reads: "All property subject to taxation shall be assessed for taxation at its full cash value." Similarly, section 401, Revenue and Taxation Code, enacted in 1939, provides: "Except as provided in this part, all taxable property shall be assessed at its full cash value." Section 110, Revenue and Taxation Code, (once contained in Pol. Code, § 3617) defines "value," "full cash value" or "cash value" as "the amount at which property would be taken in payment of a just debt from a solvent debtor." "Full cash value" is synonymous with "market value." (*De Luz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546, 561-562 [290 P.2d 544); *Michael Todd Co.* v. *County of Los Angeles,* 57 Cal.2d 684, 686 [21 Cal. Rptr. 604, 371 P.2d 340].)

Section 3627, Political Code, predecessor of section 401, Revenue and Taxation Code, was enacted in 1872 and, except for the addition of the word "taxable" (1881), remained unchanged until it became section 401 in 1939 and "shall"

was substituted for the word "must." While section 3627 specifically provided that "All taxable property must be assessed at its full cash value," during its 67 years of existence, administrative and legislative authorities uniformly held to the view that it permitted property to be assessed at a uniform fraction, rather than 100 per cent of cash value, as long as full cash value was the standard or basis of each assessment. ■ This view, acknowledged and accepted by appellate courts in this state, grew out of the early consistent practice of those administering our revenue law—the State Board of Equalization and assessors of each county—of assessing property at a uniform fraction of cash value, as reflected in biennial reports (since 1878) made by the State Board of Equalization to the Governor under section 3692, Political Code,[1] and in annual reports of results of certain studies (since 1921) by the State Board of Equalization to the California Legislature,[2] of which we take judicial notice. (*Watson v. Los Altos School Dist.*, 149 Cal.App.2d 768, 772 [308 P.2d 872].)

Legislative approval followed the administrative practice of fractional assessments. At least since 1921 the California Legislature had been directly aware of the administrative interpretation section 3627 had uniformly received; and in 1933, as part of the "Riley-Stewart Tax Plan," it proposed the incorporation in the California Constitution of a provision based upon, and almost identical with, section 3627. Thus,

---

[1]Report for 1881-1882, page 8; Report for 1885-1886, page 5. Report for 1907-1908, page 12, states: "It is within the certain knowledge of this Board that the percentage of assessed value to actual value of property in the several counties varies from, say 25% to 80%."

Special Report on Relative Burden of State and Local Taxes for 1912, page 12: ". . . the proportion of assessed value to actual value is 45.1%. This is the average for the whole state, the individual counties, of course, differing widely in their proportion of assessed to actual value."

[2]Report for 1921-1922, page 71, states: "Property taxed in California on an ad valorem basis is not assessed at its full market value; in fact, is assessed on an average at a little less than 50% of its market value."

Report for 1923-1924, page 67, the State Board of Equalization reported to the Legislature that average assessment ratio was less than 50 per cent of market value.

Report for 1929-1930, page 18, reported: ". . . The assessments average about 39.95% of the appraised or market value of the property."

Report for 1931-1932, reported state-wide assessments averaged 43.22 per cent of the market value of property.

this amendment, article XI, section 12, provides: "All property subject to taxation shall be assessed for taxation at its full cash value." (Senate Constitutional Amendment 30, Stats. 1933, ch. 63, pp. 3072-3073.) This amounted to an inclusion in the Constitution of what had been the law since 1872; it is apparent that no change in assessment procedure was intended or contemplated. The Legislature carried over into the constitutional amendment the substantially identical language of section 3627, under which it knew that market value was being used as a standard for fractional assessments. (See footnote 2.) Moreover, since 1890, numerous judicial opinions had recognized and recited the practice being employed under the administrative construction of section 3627. (*San Jose, etc. R.R. Co.* v. *Mayne* (1890) 83 Cal. 566, 570 [23 P. 522]; *Southern Pacific Land Co.* v. *County of San Diego* (1920) 183 Cal. 543, 545 [191 P. 931]; *Birch* v. *County of Orange* (1921) 186 Cal. 736, 740 [200 P. 647]; *Wild Goose Country Club* v. *County of Butte* (1922) 60 Cal.App. 339, 343 [212 P. 711]; *Birch* v. *County of Orange* (1927) 88 Cal. App. 82, 87 [262 P. 788]; *Hammond Lumber Co.* v. *County of Los Angeles* (1930) 104 Cal.App. 235, 244 [285 P. 896]; *L. W. Blinn Lumber Co.* v. *County of Los Angeles,* 216 Cal. 474, 477, 479 [14 P.2d 512, 84 A.L.R. 1304].) ██ In the absence of contrary indication in a constitutional amendment, terms used therein must be construed in the light of their statutory meaning or interpretation in effect at the time of its adoption. (*Forster Shipbuilding Co.* v. *County of Los Angeles,* 54 Cal.2d 450, 456 [6 Cal.Rptr. 24, 353 P.2d 736].) Persuasive, too, is the absence of mention of any basic change in the administrative practice of assessing at a fraction of full cash value in the "address" to the voters printed on the ballots used in the election in which this amendment was adopted. (Proposed Amendments to Constitution, Special Edition, June 27, 1933; *Pasadena* v. *County of Los Angeles,* 182 Cal. 171, 174 [187 P. 418].) Shortly after the adoption of article XI, section 12, but on facts arising prior thereto, the case of *Rittersbacher* v. *Board of Supervisors* (1934) 220 Cal. 535 [32 P.2d 135] (cert. den. 293 U.S. 592 [55 S.Ct. 107, 79 L.Ed. 686]) was decided, and therein no mention of any contemplated change was made by the court.

That the Legislature four years later, in 1939, again intended no change in the administrative practice of fractional assessments under section 3627, Political Code, and article XI, section 12, California Constitution, is reflected in its adoption

of section 3627 as section 401, Revenue and Taxation Code. At this time administrative authorities, as before, were construing article XI, section 12, as permitting the use of market value as the standard or basis for assessment. ■ Continuous, consistent and contemporaneous administrative interpretation of constitutional and statutory provisions is a persuasive force in their construction (*Pearson* v. *State Social Welfare Board*, 54 Cal.2d 184, 210 [5 Cal.Rptr. 553, 353 P.2d 33]; *City of Los Angeles* v. *Rancho Homes, Inc.*, 40 Cal.2d 764, 770, 771 [256 P.2d 305]) and, while not necessarily controlling, "is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized." (*Coca-Cola Co.* v. *State Board of Equalization*, 25 Cal.2d 918, 921 [156 P.2d 1].) ■ In the face of the many decisions in this state herein referred to, we cannot say that the administrative construction resulting in the assessment of taxable property by a county at a uniform fraction of its full cash value is "erroneous or unauthorized." Similarly, contemporaneous construction of the Constitution by those charged with the duty of collecting taxes has been given great weight in *Select Base Materials, Inc.* v. *Board of Equalization*, 51 Cal.2d 640, 647 [335 P.2d 672]; and *Coca-Cola Co.* v. *State Board of Equalization*, 25 Cal.2d 918, 921 [156 P. 2d 1]. The practice continued as before,[3] and today, throughout California assessors assess property for tax purposes at a fraction of its market value—they determine the market value of the property subject to taxation and apply to that value a common ratio.[4]

Further indicative of the legislative interpretation of article XI, section 12, and section 401, clearly contemplating fractional assessments, is the adoption of sections 1815-1832.5 Revenue and Taxation Code, in 1957. Under present sections 1818, 1821, 1822 and 1822.5, the State Board of Equalization must annually ascertain within each county the average ratio

---

[3]Report, Joint Interim Committee on Assessment Practices (1959), page 33 (Appendix to Journal of the Senate, Reg. Session, vol. 1 (1959); Senate Interim Committee Report on State and Local Taxation (1953) pp. 70-71 (Appendix to Journal of the Senate, Reg. Session, vol. 3 (1953); Final Report, Assembly Interim Committee on Revenue and Taxation (1957), vol. 4, No. 7, p. 45.)

[4]In 1963 real property was assessed at a state-wide average of 23.1 per cent, and in Los Angeles County the ratio of assessed to full cash value of locally assessible tangible property is 24.0 per cent. (Annual Report to the Governor by State Board of Equalization, December 31, 1963.)

of assessed value to full cash value and determine the state-wide average; and is empowered thereunder and by article XIII, section 9, to change the entire assessment roll of counties so that it will conform with the state-wide average.

Appellant, citing numerous cases both in and out of this jurisdiction, argues that article XI, section 12, is mandatory, does not sanction enforcement at the discretion of county assessors, is clear and requires no interpretation, does not legally permit the practice of fractional assessments, and for years has been erroneously construed by administrative authorities and, even though its construction has been approved by the Legislature, is void and of no effect. We do not question the authorities upon which appellant relies, but the administrative practice condemned by him is not the sole authority for fractional assessments in California. In the face of the specific provision in section 3627, Political Code, and now, article XI, section 12, California Constitution, and section 401, Revenue and Taxation Code, that all property shall be assessed at its "full cash value," the practice of assessing at a uniform fraction of full cash value on a standard of full cash value based on the administrative construction of constitutional and statutory provisions, has been consistently followed from 1872 to the present with the knowledge and permission of not only the California Legislature but the courts. While the issue of its legality has never been squarely presented to them, for well over 70 years the practice of assessors of using a ratio of market value to assessed valuation has been repeatedly and consistently recognized, referred to, permitted and accepted by appellate courts in this state. As early as 1890 (*San Jose etc. R.R. Co.* v. *Mayne,* 83 Cal. 566 [23 P. 522]) and as late as 1960 (*Pearson* v. *State Social Welfare Board,* 54 Cal.2d 184 [5 Cal.Rptr. 553, 353 P.2d 33]) the Supreme Court acknowledged that assessed valuation is not the equivalent of market value of property. In *San Jose etc. R. R. Co.* v. *Mayne* (1890) 83 Cal. 566 [23 P. 522], it held that in condemnation proceedings the assessment of property for taxation is inadmissible as evidence of its value because it is made "not usually at the market value of the property." (P. 570.) In numerous subsequent cases the practice of assessing land "at a percentage of true value" (*Southern Pacific Land Co.* v. *County of San Diego* (1920) 183 Cal. 543, 545 [191 P. 931]), has been described, referred to, relied upon and acknowledged. (*Birch* v. *County of Orange* (1921) 186 Cal. 736, 740 [200 P. 647]; *Wild Goose*

*Country Club* v. *County of Butte* (1922) 60 Cal.App. 339, 343 [212 P. 711]; *Birch* v. *County of Orange* (1927) 88 Cal. App. 82, 87 [262 P. 788]; *Hammond Lumber Co.* v. *County of Los Angeles* (1930) 104 Cal.App. 235, 244 [285 P. 896]; *L. W. Blinn Lumber Co.* v. *County of Los Angeles,* 216 Cal. 474, 477, 479 [14 P.2d 512, 84 A.L.R. 1304].)

In 1934 the Supreme Court decided *Rittersbacher* v. *Board of Supervisors,* 220 Cal. 535 [32 P.2d 135] (cert. den. 293 U.S. 592 [55 S.Ct. 107, 79 L.Ed. 686]); while the facts arose prior to the 1933 constitutional amendment (art. XI, § 12), the case was subsequently at issue. Respondent claims that the court "specifically stated" therein that Political Code, section 3627, permitted fractional assessments; appellant says that any suggestion to that effect is pure dicta inasmuch as it is an equalization case, simply refers to the rule that the taxpayer need not be assessed at 100 per cent of full cash value to claim discrimination, and no one therein contended that the taxpayer should be assessed at full cash value. An analysis of the case reflects less than that advanced by respondent but more than claimed by appellant. Therein plaintiffs alleged that the assessor had deliberately pursued an erroneous and discriminatory method of assessing different classes of property resulting in inequitable valuations of their property. In upholding the assessment the court stated that if plaintiffs were to prevail they must show that the assessor acted arbitrarily or in wilful disregard of the law and that it constituted a constructive fraud upon them; but that the documentary evidence attached to their petition counteracted such showing. A written report of the assessor made to the Board of Equalization (attached to the petition) showed the tremendous volume of work involved and the necessity for the assessor to promulgate certain rules and formula to secure uniformity in valuation. The court said: "In arriving at the value of all property for the purposes of assessment the assessor is guided generally by section 3617 of the Political Code which defines the term 'value' as 'the amount at which the property would be taken in payment of a just debt from a solvent debtor.' This value is expressed in section 3627 of the Political Code as the 'full cash value' for purposes of assessment. It is the assessor's recognized duty to see that the valuation placed on the various kinds of property shall be in proportion to the worth of such properties. If it is proportional and all are treated alike, no one contends that the taxpayer must be charged at full one hundred per cent,

*for such is not required by law."* (Italics added.) (Pp. 543, 544.) While this was an equalization case and the validity of fractional assessments was not in issue, the court nevertheless indicated that there was no requirement by law that property be assessed at full 100 per cent of market value as long as the assessments were in proportion to the other of such property and all were treated alike. ■■■ This conforms to the general view adhered to by the courts in this state that equality and uniformity are the constitutional and statutory goals in property taxation, rather than rigid adherence to 100 per cent of market value; and that these goals are achieved by means of using market value as a standard or basis and applying a uniform fraction to that standard. Apposite is the court's reasoning in *Switz* v. *Township of Middleton,* 23 N.J. 580 [130 A.2d 15, at p. 22]: "... It is a mathematical truth in this regard there can be no essential difference between true value and a common ratio of true value applicable alike to all in the same class. In either event, the base is true value, and the assessments are in fact made according to the same standard of value."

The above quoted language in *Rittersbacher* was cited with approval by this court in 1960 in *A. F. Gilmore Co.* v. *County of Los Angeles,* 186 Cal.App.2d 471, at page 476 [9 Cal.Rptr. 67]. This too was an equalization case wherein plaintiffs asserted that the County Board of Equalization had arbitrarily, discriminatorily and fraudulently refused to reduce their land assessment. More relevant is the court's clear recognition, in its discussion at pages 477 and 478, of the practice of ratio assessments where market value is used as a standard.

While the validity of fractional assessments has never been at issue before the appellate courts, we have found no California case in which it has been declared or even suggested that the practice of applying a uniform county-wide ratio to market value as determined by the assessor was violative of constitutional and legislative provisions, or in which the concept of fractional assessment has been rejected, criticized or disapproved. To the contrary, decisions from 1933 to the present have permitted the practice to continue under article XI, section 12, California Constitution and section 401, Revenue and Taxation Code. In most instances the court has held "fair market value" to be the equivalent of "full cash value," discussed the formula employed by the local assessor, and approved his use of a uniform ratio in the assessment

practice. Nor have we found any case law in California supporting appellant's position; *Eisley* v. *Mohan* (1948) 31 Cal. 2d 637 [192 P.2d 5], called to our attention by both parties, is, and appellant concedes it is, no authority for his contention herein.

Subsequent to *Rittersbacher* v. *Board of Supervisors* (1934) *supra,* numerous decisions recognized the practice of proportional assessment of property at less than full market value; in each instance the market value was used as the standard or basis for the assessment and all taxpayers similarly situated were treated alike. In *Michael Todd Co.* v. *County of Los Angeles* (1962) 57 Cal.2d 684 [21 Cal.Rptr. 604, 371 P.2d 340], the court approved the method of valuation employed by the county assessor in the assessment of negatives of a motion picture. The methods used in computing their valuation were described in detail; each resulting figure "was then reduced to 30 per cent and the remaining balance multiplied by 50 per cent to produce the assessed value." (Footnote 5, p. 697.) The court found ". . . the method of valuation here employed by the Los Angeles County Assessor was proper." (P. 697.) In a series of cases decided by the Supreme Court in 1955, involving assessments in Solano, San Bernardino, San Diego and Orange Counties, the assessor's method of valuation and assessment, approved in each case, showed assessment of property at a fraction of its market value. In each, the court acknowledged the ratio applied to market value by the assessor; and, in holding "full cash value" to be synonymous with "market value" and that it is the "standard of valuation" (*De Luz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546, 561 [290 P.2d 544]), recognized that fair market value provided the test or basis for the assessor in the assessment process, and, once the market value is determined by him, the use of a uniform county-wide ratio in arriving at the figure of assessed valuation. In *Fairfield Gardens, Inc.* v. *County of Solano* (1955) 45 Cal.2d 575, 577 [290 P.2d 562], a 25 per cent ratio of assessed value to market value was used in Solano County (p. 577); in *Victor Valley Housing Corp.* v. *County of San Bernardino,* 45 Cal.2d 580 [290 P.2d 565], the method used by the assessor included the reduction of the value of certain property "to 20 per cent thereof to allow for the ratio of assessment value to market value . . ." (p. 583); in *De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546 [290 P.2d 544], assessment was made at a ratio of 35 per cent of market value (p. 559); and in *El Toro Dev.*

414

*Co.* v. *County of Orange,* 45 Cal.2d 586 [290 P.2d 569], assessments were made at "market value less 30 per cent thereof to allow for the ratio of assessment value to market value." (P. 588.) An assessment in which the assessor's computation formula gave ". . . the sum of $1,612,500, as the present value of plaintiff's one-year possessory interest; and 50 per cent of this amount, or $806,200, was fixed as the assessment figure," was upheld in *Kaiser Co.* v. *Reid* (1947) 30 Cal.2d 610, 615, 616 [184 P.2d 879]. In 1927, 1928 and 1929 real property in the County of Los Angeles was assessed at 50 per cent of its market value. Of this the court, in *Orpheum Circuit, Inc.* v. *County of Los Angeles* (1936) 12 Cal.App.2d 257 [55 P.2d 901], said: "The figure thus obtained [after computation] was taken as the 'appraised value' and thereafter the 'assessed value' or 'full cash value' was fixed by the assessor at fifty per cent of said 'appraised value.' "(P. 258.) The court was aware of the local practice of assessing property at less than its fair market value, for at page 261 it quoted from a Los Angeles City Ordinance confirming and ratifying the practice of the assessor "of determining the *actual cash value* thereof by first determining the fair market value of such taxable property and by using an amount not exceeding fifty per centum of such fair market value as determined by said Assessor. . . ." (P. 261.) Other cases referring to the practice of assessors of using a ratio of market value to assessed valuation, are *Dawson* v. *County of Los Angeles* (1940) 15 Cal.2d 77, 78, 81 [98 P.2d 495] ; *McClelland* v. *Board of Supervisors* (1947) 30 Cal.2d 124, 134 [180 P.2d 676] ; *Rancho Santa Margarita* v. *County of San Diego* (1932) 126 Cal.App. 186, 200 [14 P.2d 588] ; *Southern Cal. Tel. Co.* v. *Los Angeles County* (1941) 45 Cal.App.2d 111, 122, 126-127 [113 P.2d 773] ; *Eastern Columbia, Inc.* v. *County of Los Angeles* (1943) 61 Cal.App.2d 734, 739, 740 [143 P.2d 992] ; *Crothers* v. *County of Santa Cruz* (1957) 151 Cal.App.2d 219, 221 [311 P.2d 557] ; *Lockheed Aircraft Corp.* v. *County of Los Angeles* (1962) 207 Cal.App.2d 119, 123 [24 Cal.Rptr. 316].) In *Pearson* v. *State Social Welfare Board* (1960) 54 Cal.2d 184 [5 Cal.Rptr. 553, 353 P.2d 33], plaintiffs sought to qualify for old age benefits under section 2164, Welfare and Institutions Code, on the ground that they owned property with an assessed valuation of less than $5,000. The property consisted of 1,000 acres of land with estimates of market value ranging from $65 to $150 an acre. While the difference between the assessed valuation and the market value of the land

was clearly apparent, the Supreme Court did not question the assessed value of the property, but accepted the assessed valuation as less than its full cash or market value in deciding the issue of eligibility for old age assistance.

That most of the above cited cases are equalization cases is no answer to the judicial recognition therein of the use and propriety of the practice of fractional assessments. Further, appellant says that the most they hold is that "market value" is equivalent to "full cash value." But it is still the fact that therein the court referred to and considered the constitutional and statutory provisions in question in recognizing the use of ratio assessments where fair market value is used as a standard, and in connection therewith, use of the term "standard" of valuation. The language in these cases suggests that "standard" was used therein in the sense that "market value" (equivalent to "full cash value") provided the criterion, test, rule or measure of value for the assessor, and that he is permitted, in meeting this standard, to fix the assessment at less than fair market value. (See for example, *De Luz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546 [290 P.2d 544]; and *Michael Todd Co.* v. *County of Los Angeles,* 57 Cal.2d 684, 697 [21 Cal.Rptr. 604, 371 P.2d 340].) "Standard" in its common usage means "test," "rule" or "measure"; it is so defined in Webster's Third New International Dictionary, volume 2, page 2223, "STANDARD applies to any authoritative rule, principle, or measure used to determine the quantity, weight, or extent, or esp. the value, quality, level or degree of a thing . . . ."

Relying heavily upon certain cited language in numerous decisions out of this jurisdiction, mainly, Iowa, Massachusetts, Connecticut and New Jersey, appellant argues that the term "full cash value" means exactly what it says and there is no room for interpretation in article XI, section 12. While his argument might have been controlling in 1872 when section 3627, Political Code, was enacted, or even in 1933 or 1939, the present posture of article XI, section 12, California Constitution, and section 401, Revenue and Taxation Code in our revenue system admits of almost a century of administrative construction permitting the practice of fractional assessment, which has been scrutinized by tax commissions, sanctioned by the Legislature and acknowledged and accepted by appellate courts in this state. Thus we see no application of the foreign cases cited; they would be pertinent only in the absence of some judicial acknowledgment

or approval of the assessment process used in this state in the past 90 years. Even then, legislation differed from constitutional and legislative provisions in California; while equality and uniformity of taxation seem to be the common goal, the action taken and the means employed to achieve it differ with the several states. In some cases the practice of assessing property at a fraction of full cash value was discussed and, in a few instances, held .not to be consistent with existing legislation, but the concept of fractional assessments was not rejected; in fact, in New Jersey and Connecticut legislation providing for the same was adopted. (Conn. Rev. Stats., §§ 12-64 and 12-77, adopted by the General Assembly, 1957 Session by Public Act No. 673 (§§ 6, 7) effective June 21, 1957; N.J. Stats., ch. 51, Law of 1960.) Further discussion of these cases we deem to be unnecessary.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., concurred.

FOURT, J.—I dissent.

There is but one issue in this case, namely whether all specified property subject to taxation shall be assessed at its *full cash value* as provided for in the Constitution and statutes or whether such property shall be assessed at a uniform percentage of full cash value as determined by the county assessor.

In this case the defendant assessor has announced his intention to assess all property at 25 per cent of its fair market value, asserting in effect that locally assessable tangible property may be legally assessed at any uniform fraction of its fair market value rather than at its full cash value as provided for in the Constitution. The sections of the Constitution and statutes particularly pertinent to this matter are as follows: Section 1 and 9 of article XIII; section 12 of article XI; section 22 of article I, and sections 110 and 401 of the Revenue & Taxation Code.[1]

---

[1]*Article XIII, section 1.* All property in the State except as otherwise in this Constitution provided, not exempt under the laws of the United States, *shall be taxed in proportion to its value, to be ascertained as provided by law, or as hereinafter provided. . . ."*

*Article XIII, section 9.* State and County Boards of Equalization.

A State Board of Equalization, consisting of four members, shall be elected by the qualified electors of their respective districts, at each gubernatorial election, whose term of office shall be for four years;

It is Hornbook law that the provisions of the Constitution are mandatory and prohibitory and self-executing. See *State Board of Education* v. *Levit,* 52 Cal.2d 441, 460 [343 P.2d 8] ; *Matter of Maguire,* 57 Cal. 604, 609 [40 Am.Rep. 125] ; *Oakland Paving Co.* v. *Hilton,* 69 Cal. 479, 512 [11 P. 3]. The rule applies to all sections of the Constitution alike and is

---

whose duty it shall be to equalize the valuation of the taxable property in the several counties of the State for the purposes of taxation. The Controller of State shall be ex officio a member of the board. The boards of supervisors of the several counties of the State shall constitute boards of equalization for their respective counties whose duty it shall be to equalize the valuation of the taxable property in the county for the purposes of taxation; provided, such state and county boards of equalization are hereby authorized and empowered, under such rules of notice as the county boards may prescribe, as to the county assessments and under such rules of notice as the state board may prescribe as to the action of the state board, to increase or lower the entire assessment roll, or any assessment contained therein, so as to equalize the assessment of the property contained in said assessment, equalize the assessment of the property contained in said assessment roll, and make the assessment conform to the true value in money of the property contained in said roll; provided, that no board of equalization shall raise any mortgage, deed of trust, contract, or other obligation by which a debt is secured, money or solvent credits, above its face value. The present State Board of Equalization shall continue in office until their successors, as herein provided for, shall be elected and shall qualify. The Legislature shall have power to redistrict the State into four districts as nearly equal in population as practical, and to provide for the elections of members of said Board of Equalization.

*Article XI, section 12.* Except as otherwise provided in this Constitution, the Legislature shall have no power to impose taxes upon counties, cities, towns or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.

All property subject to taxation shall be assessed for taxation at its *full cash value.*

*Article I, section 22.* The provisions of this Constitution are *mandatory and prohibitory,* unless by express words they are declared to be otherwise.

*Revenue & Taxation Code, section 110.* ''Full cash value'': ''Cash value.'' ''Value,'' ''*full cash value,*'' or ''cash value'' *means the amount at which property would be taken in payment of a just debt from a solvent debtor.* In determining the ''actual value'' of intangible personal property, the assessor shall not take into account the existence of any custom or common method, if any, in arriving at the full cash value of any class or classes of property.

*Revenue & Taxation Code, section 401.* Valuation basis for assessment. Except as provided in this part, *all taxable property shall be assessed at its full cash value.*

binding upon every department of government. *People* v. *City of San Buenaventura,* 213 Cal. 637, 639-640 [3 P.2d 3].

Nowhere is it indicated that the assessor need not comply with the provisions of the Constitution and the statutes. The law plainly is that its provisions shall be obeyed and disobedience of them is prohibited.

There is no ambiguity in either the language of the constitutional provisions or in the statutes. It is clear to me from what is stated, what is meant. Nowhere is it stated or indicated that the assessor has the right to determine whether property shall be assessed at full cash value or at his favorite fractional percentage of full cash value.

The meaning of "full cash value" has been determined by both legislative and judicial fiat. It has been held that "full cash value" is synonomous with "market value." *City of Los Angeles* v. *Western Union Oil Co.,* 161 Cal. 204, 207 [118 P. 720]; *Crocker* v. *Scott,* 149 Cal. 575, 585 [87 P. 102]; see also *Michael Todd Co.* v. *County of Los Angeles,* 57 Cal.2d 684, 696 [21 Cal.Rptr. 604, 371 P.2d 340]; *De Luz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546, 561-562 [290 P.2d 544]; *Lockheed Aircraft Corp.* v. *County of Los Angeles,* 207 Cal.App.2d 119, 128 [24 Cal.Rptr. 316].

This court should not attempt to put a non-existent or imaginary ambiguity into the matter of assessments and taxes by holding in effect that the assessor may juggle the placement of certain taxes on certain holders of certain property.

The majority in this particular case in effect hold that the long continued, systematic and intentional violation of the law somehow constitutes or has developed into a right in the assessor to violate the specific provisions of the law. As counsel for appellant has stated—"The Constitution is not such a slender reed that it can be destroyed by a mere twist of the bureaucratic hand. Even mere *statutes* requiring full cash value assessment are not repealed by administrative neglect."

The Iowa Supreme Court in deciding a case where substantially the same arguments were made as are asserted by the respondent in this case said: "These duties which they have knowingly and deliberately refused to perform are imperative duties. They are commands of the legislature. The defendants have no discretion in the matter, with respect to obeying those commands. Since the statute requires that all property shall be assessed and taxed at its actual value, they have no right to disregard this legislative injunction, because they deem it unwise or inexpedient, or because others in their

position in the past have so violated the law." (*Pierce* v. *Green* (1940) 229 Iowa 22 [294 N.W. 237, 248, 131 A.L.R. 335].) The above quoted sentence from the Iowa case was quoted with approval in *Switz* v. *Township of Middleton,* 40 N.J. *Super.* 217 [122 A.2d 649, 655], where the court declared improper and illegal a century old practice of using fractional assessments.

No amount of juggling, subterfuge, circumventions, evasions, deception, maneuvering, legalistic legerdemain or sorcery can change the plain and specific provisions of the Constitution. If the rule were otherwise no one could ever rely upon his rights under the Constitution.

Our courts have held in the past that failure upon the part of an administrative body properly to tax a trust does not constitute an administrative construction and it has been said : "Moreover, an erroneous administrative construction does not govern the interpretation of a statute, even though the statute is subsequently re-enacted without change." *Estate of Madison* (1945) 26 Cal.2d 453, 463 [159 P.2d 630]. "Delayed action on the part of those charged with the execution of laws will not be permitted to annul the law." *Painless Parker* v. *Board of Dental Examiners,* 216 Cal. 285, 299 [14 P.2d 67]. And statutes cannot be held to be repealed by virtue of changed conditions. *People* v. *Harmon,* 54 Cal.2d 9, 26 [4 Cal. Rptr. 161, 351 P.2d 329] ; *Palermo* v. *Stockton Theatres, Inc.,* 32 Cal.2d 53, 63 [195 P.2d 1].

The United States Supreme Court held in *District of Columbia* v. *Thompson Co.,* 346 U.S. 100, 113-114 [73 S.Ct. 1007, 97 L.Ed. 1480], that "The failure of the executive branch to enforce a law does not result in its modification or repeal." It would seem to go without saying that if a failure to abide by a statute does not repeal or modify it, then certainly such conduct can have no effect upon constitutional provisions. See also *Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385, 399 [175 P.2d 512], *Hammond* v. *McDonald,* 49 Cal.App.2d 671, 678 [122 P.2d 332], and *Golden Gate Scenic S. S. Lines, Inc.* v. *Public Utilities Com.,* 57 Cal.2d 373, 377 [19 Cal.Rptr. 657, 369 P.2d 257].

There never has been (so far as I can ascertain) a direct holding in California upon the exact point involved in this proceeding. There have been, it is true, cases which were concerned with the right to equalize assessments, without making a full cash value assessment, but as I read the decisions in no sense did the courts in those particular cases ever hold

in the face of the problem here presented that the Constitution does not mean what it states. Those cases must be read in the light of the questions which were presented and passed upon at the time.

It would seem that full cash value is the only standard that is just and uniform and the one whereby each citizen can be required to support the government according to the value of his property. But whether or not it is a proper standard or not is not before this court—the command of the Constitution is clear and we should not put our stamp of approval upon any evasive actions. See *United States* v. *Jimmerson*, 222 F. 489, 495 [L.R.A. 1918B 1102] (cert. denied 239 U.S. 641 [36 S.Ct. 163, 60 L.Ed. 482]) and *Pierce* v. *Green*, 229 Iowa 22 [294 N.W. 237, 244, 131 A.L.R. 335, 344], where it is said: "Of this matter Prof. James C. Bonbright, of Columbia University in his late work 'The Valuation of Property,' Volume I, pages 497, 498, says: 'Theoretically the taxpayers' pocket is not in the least affected by uniform undervaluation or overvaluation. Systematic undervaluation diminishes the tax base, and the rate must therefore rise in order to supply the required government revenue. . . . The objections to the practice of undervaluation are patent. In the first place, except where sanctioned by statute, it involves a generally known and sanctioned disregard by officials of the law requiring them to assess property at its full and fair value. The other great vice is that the percentage of undervaluation is rarely a matter of common knowledge so that it is extremely difficult to ascertain whether there is uniformity in the proportion, or whether, through incompetence, favoritism or corruption of the assessors, some portions of the taxing body are bearing the others' burdens, as between either individuals or local groups.' "

The majority of the court in this instance indicates that appellant here has neither pleaded nor offered to prove that he has suffered or might suffer any detriment as a result of assessments at 25 per cent of the full cash value of his property. Surely a citizen, resident, elector and property owner does not have to show a detriment before he can compel the officers of his government to comply with the Constitution. It was appropriately stated in *United States* v. *Lee*, 106 U.S. 196, 220 [1 S.Ct. 240, 27 L.Ed. 171, pages 181-182]:

"No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the Government, from the highest to the lowest, are creatures of the law and are bound to obey it.

"It is the only supreme power in our system of government, and every man who, by accepting office, participates in its functions, is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes upon the exercise of the authority which it gives.

"Courts of justice are established not only to decide upon the controverted rights of the citizens as against each other, but also upon rights in controversy between them and the Government. . . ."

But the fact of the matter is that plaintiff and many others in his position have suffered and do now suffer a detriment because of fractional assessing and this court can without question take judicial notice of what occurs. The agreed statement before this court sets forth that plaintiff is an honorably discharged veteran, ineligible for the veterans' exemption because he owns property worth over $5,000 and is a widower and that "(e) the Los Angeles Unified School District, within which plaintiff resides and to which he pays taxes, has a maximum property tax limit by reason of certain provisions of the Education Code. (f) by reason of section 450 through 455 of the Welfare & Institutions Code, applicants for public assistance may retain real property producing income, reasonably consistent with its value, which is used for the support of the applicant, not to exceed an assessed valuation of $5,000 as assessed by the county assessor. (g) the bonding capacities of the City of Los Angeles, County of Los Angeles and other taxing districts within which plaintiff resides are in direct proportion to the assessed value of property located within the limits of said city, said county and said districts."

The assessed valuation of property is the valuation used in applying the provisions of section $1\frac{1}{4}$ of article XIII of the Constitution (veterans' exemptions).[2] It is perfectly

---

[2]§1¼. *Exemption on Account of Military Service.*

"The property to the amount of one thousand dollars ($1,000) of every resident of this State who has served in the Army, Navy, Marine Corps, Coast Guard or Revenue Marine (Revenue Cutter) Service of the United States (1) in time of war, or (2) in time of peace, in a campaign or expedition for service in which a medal has been issued by the Congress of the United States, and in either case has received an honorable discharge therefrom, or who after such service of the United States under such conditions has continued in such service, or who in time of war is in such service, or who has been released from active duty because of disability resulting from such service in time of peace or under other honorable conditions, or lacking such amount of property in his own

apparent that persons (veterans) owning approximately four times the permitted maximum amount of property set forth in the Constitution ($5,000) are now exempt from taxation when they otherwise would have to pay. In other words a veteran's property, the actual cash value of which is $19,950, is presently assessed at $4,987.50. The veteran under the present administration of the law is entitled to a $1,000 exemption whereas in fact he is legally and constitutionally not entitled to any exemption.

Section 455 of the Welfare and Institutions Code provides as follows:

"§ 455. Real property owned by the appellant or in combination with his spouse which is producing income, reasonably consistent with its value, which is used for the support of the applicant, may be retained in an amount not to exceed an assessed valuation of five thousand dollars ($5,000) as assessed by the county assessor."

In other words, a recipient of public assistance as defined in the Welfare & Institutions Code (§§ 450-455) can continue to draw such assistance and have property of the actual cash value of $19,950 because such property will be assessed at $4,987.50 and not at its actual cash value.

Under the circumstances it does not require a pencil and paper to calculate that fractional assessments are of a decided detriment to many taxpayers and a windfall to others.

---

name, so much of the property of the wife of any such person as shall be necessary to equal said amount; and the property to the amount of one thousand dollars ($1,000) of the widow resident in this State, or if there be no such widow, of the widowed mother resident in this State, of every person who has so served and has died either during his term of service or after receiving an honorable discharge from said service, or who has been released from active duty because of disability resulting from such service in time of peace or under other honorable conditions, and the property to the amount of one thousand dollars ($1,000) of pensioned widows, fathers, and mothers, resident in this State, of soldiers, sailors and marines who served in the Army, Navy, Marine Corps, Coast Guard or Revenue Marine (Revenue Cutter) Service of the United States shall be exempt from taxation; *provided, this exemption shall not apply to any person named herein owning property of the value of five thousand dollars ($5,000) or more,* or where the wife of such soldier or sailor owns property of the value of five thousand dollars ($5,000) or more. No exemption shall be made under the provisions of this section of the property of a person who is not legal resident of the State; provided, however, all real property owned by the Ladies of the Grand Army of the Republic and all property owned by the California Soldiers Widows Homes Association shall be exempt from taxation."

In 1957 the then legislative counsel (Ralph Kleps, presently the director of the administrative office of the California courts) was asked (1) whether there was any legally specified standard for the assessment of property for tax purposes, (2) whether in the event a county assessor assesses property at less than its full cash value for tax purposes there is any way in which the assessment could be corrected to conform to that value and (3) whether an assessor who assesses property at less than full cash value thereby subjects himself to any liability. The legislative counsel's answer to the first question was that the standard is the ''full cash value'' and he then stated:

''Our State Constitution states that all taxable property 'shall be taxed in proportion to its value' (art. XIII, § 1), and provides that all 'property subject to taxation shall be assessed for taxation at its full cash value' (art. XI, § 12).

'' 'Full cash value' has been defined as 'the amount at which property would be taken in payment of a just debt from a solvent debtor' (Rev. & Tax. Code, § 110). As our Supreme Court recently described it, it is 'the price that property would bring to its owner if it were offered for sale on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other. It is a measure of desirability translated into money amounts . . . and might be called the market value of property for use in its present condition' (*De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546, 562 [290 P.2d 544]). The Supreme Court of the United States has stated unequivocally that it is synonymous with 'market value' (*San Francisco National Bank* v. *Dodge* (1904) 197 U.S. 70, 80 [25 S.Ct. 384, 49 L.Ed. 669, 674]).

''As thus defined, 'full cash value' is the standard of value for property tax purposes (see *De Luz Homes, Inc.* v. *County of San Diego,* above, at pp. 561-562).

''In concluding this analysis, we direct your attention to the case of *Eisley* v. *Mohan* (1948) 31 Cal.2d 637 [192 P.2d 5], in which the court considered the constitutionality of former section 987 of the Revenue and Taxation Code, which read:

'' 'The cash value of a possessory interest in real estate of the Veterans Welfare Board is the following percentage of the cash value of the property during the following periods of the life of the contract covering sale of the property:

'' '(a) Thirty percent during the first quarter period of the life of the contract;

" '(b) Forty-five percent during the second quarter period;
" '(c) Sixty-five percent during the third quarter period; and
" '(d) Eighty-five percent during the fourth quarter period.'

"The possessory interests involved were those of veterans in property being purchased for them by the State pursuant to the Veterans' Farm and Home Purchase Act (Mil. & Vet. Code, § 800 and following), title, however, remaining in the State for security purposes until the completion of all required payments.

"Holding that section 987 was unconstitutional, the Supreme Court stated (at p. 645): '. . . But the Legislature cannot set aside the constitutional provision declaring that "[a]ll property . . . shall be taxed in proportion to its value" . . . by requiring the assessment of property at less than its full cash value. Section 987 is, therefore, invalid as being in conflict with the constitutional provision.'

"Before *Eisley* v. *Mohan,* the courts had evidently countenanced the practice of assessing property at less than its market value (e.g. *Rittersbacher* v. *Board of Supervisors of Los Angeles County* (1934) 220 Cal. 535 [32 P.2d 135]; *Southern Cal. Telephone Co.* v. *County of Los Angeles* (1941) 45 Cal.App.2d 111, 126-127 [113 P.2d 773]). In none of the cases, however, was there any issue as to the propriety of the practice. The question almost invariably was whether the action of the assessor or board of equalization in assessing a particular class of property at a percentage of market value different from that used in assessing other classes resulted in a violation of the constitutional provision in section 1 of article XIII for taxation in proportion to value; and, more particularly, whether, since the latter necessitates uniformity in imposing the burdens of taxation (*Joint Highway District No. 13 of the State of Cal.* v. *Hinman* (1934) 220 Cal. 578 [32 P.2d 144]), there was any discrimination as to any of such other classes.

"In the *Rittersbacher* case, *supra,* the court stated (at pp. 543-544): '. . . It is the assessor's recognized duty to see that the valuation placed on the various kinds of property shall be in proportion to the worth of such properties. If it is proportional and all are treated alike, no one contends that the taxpayers must be charged a full hundred percent, for such is not required by the law.'

"While the last clause of this statement is clearly to the

point that an assessment may be made on the basis of a percentage of market value, it has the effect only of dictum, since there was no issue whatever in the case as to whether property might be assessed at anything less than market value. The primary question was whether there had been any discrimination in the assessment of the plaintiff's property at a particular percentage of its market value, when it appeared from the evidence that other categories of property had been assessed at smaller percentages of their market value.''

The legislative counsel's answer to the second query was that a correction could be made either by the Board of Supervisors on equalization or by subsequent court order. He further stated:

''The law provides for the assessment of common property for tax purposes by the county assessor between the first Mondays in March and July (Rev. & Tax. Code, § 405), for the delivery of his completed assessment roll to the clerk of the board of supervisors between the first and third Mondays in July of the assessments shown on that roll (Rev. & Tax. Code, § 1603).

''In equalizing, the board of supervisors 'may increase or lower any assessment on the local roll' (Rev. & Tax. Code, § 1605), for the purpose of adjusting the value of the property listed 'to conform to its real and true value' (see *People* v. *Dunn* (1881) 59 Cal. 328, and *Abrams* v. *City & County of San Francisco* (1941) 48 Cal.App.2d 1, 6 [119 P.2d 197]).

''The functions of an assessor are considered judicial in nature; hence, when he has acted within the limits of a reasonable discretion, his judgment, even though erroneous, usually will not be interfered with in the absence of actual or constructive fraud (*Eastern-Columbia, Inc.* v. *County of Los Angeles* (1943) 61 Cal.App.2d 734 [143 P.2d 992]).

''Evidence of the constructive fraud may be found in a systematic and intentional undervaluation of property (*Mahoney* v. *City of San Diego* (1926) 198 Cal. 388 [245 P. 189]), and this apparently might consist of a practice of assessing property at less than its full cash value. Nonetheless, in consideration of presently applicable court decisions, if all taxpayers similarly situated are affected alike by such practice, it is doubtful that the board of equalization or the courts would increase the assessments or order an increase therein (see *Rittersbacher* v. *Board of Supervisors of Los Angeles County* (1934) 220 Cal. 535, 543, 544 [32 P.2d 135], and see discussion of this case in analysis of first question). In the

absence of a type of discrimination creating unfair tax burdens, the courts have shown no inclination to upset assessments concededly made at less than full cash value.''

In answering the third question, it was stated: ''Section 1365 of the Revenue and Taxation Code provides for the prosecution of an assessor by the district attorney on the request of the State Board of Equalization when the latter 'is satisfied that an assessor or deputy assessor has knowingly . . . assessed any property at less than cash value.' The section read in its entirety as follows: 'Whenever the State Board of Equalization is satisfied that an assessor or deputy assessor has knowingly, fraudulently, or corruptly assessed any property at less than cash value, it shall immediately inform the district attorney of his county in writing of the facts within its knowledge, requesting that the assessor or deputy assessor be prosecuted. The district attorney shall at once comply.'

''Apparently also applicable is section 1222 of the Government Code, which provides that every 'willful omission to perform any duty enjoined by law upon any public officer, or person holding any public trust or employment, where no special provision is made for the punishment of such delinquency, is punishable as a misdemeanor.'' (1959 Assembly Journal, vol. 4, pp. 5670, and following.)

As heretofore indicated our task in this case is limited solely to determining whether the People meant what they said when they adopted the constitutional provisions in question—I think they said what they meant and that they meant what they said.

I would reverse the judgment and grant the writ of mandate.

Appellant's petition for a hearing by the Supreme Court was denied October 28, 1964. Mosk, J., did not participate therein. Peters, J., was of the opinion that the petition should be granted.