[Civ. No. 22178.    First Dist., Div. Two.    Dec. 20, 1965.]

EDWARD F. O'MARA, Plaintiff and Appellant, v. THE COUNCIL OF THE CITY OF NEWARK, Defendant and Respondent.

Moore & Patton and Douglas K. Patton for Plaintiff and Appellant.

Charles B. Snow for Defendant and Respondent.

AGEE, J.—Denied a writ of mandate by the superior court, directing the City Council of the City of Newark to set aside its finding that the nonconforming use of his property for residential purposes had been terminated by fire damage and to reconsider such finding in the light of the proper interpretation of the city's zoning ordinance, petitioner appeals from the judgment.

Petitioner owns a duplex residential building in a district in the City of Newark which, under a comprehensive zoning ordinance adopted February 16, 1956, was zoned for retail business. Under the terms of the ordinance the existing use of the building as a two-family dwelling was permitted to continue as a nonconforming use.

However, with respect to the right to such continued use, section 2-835 of the ordinance provides: "If at any time any [such] building . . . is destroyed by fire, explosion, Act of God, or act of the public enemy to the extent of more than 75 percent of the assessed value thereof according to the assessment thereof by the Assessor for the fiscal year during which destruction occurs, then . . . the building and the land on which the building was located or maintained shall from and after the date of destruction be subject to all the regulations specified by this ordinance for the district in which the land and building are located."

On January 4, 1958, the building was damaged by fire. It had been assessed by the assessor for the fiscal year of July 1, 1957-June 30, 1958, at $400. The assessor's assessed valuation of the building immediately after the fire was $200. The city

refuses to allow the nonconforming use to continue on the ground that the building was "destroyed" within the meaning of section 2-835.

The reasoning of the city is that it would cost more than $300 to repair the fire damage, thus the building was "destroyed by fire . . . to the extent of more than 75 percent of the assessed value thereof . . . ."

On the other hand, appellant contends that, for a building to be "destroyed" under said section, there must be a decrease in *assessed* value of more than 75 percent and that here the decrease is only 50 percent, i.e., from $400 to $200.

We think that appellant's interpretation is reasonable and that the city's interpretation would make the application of the section unreasonable, arbitrary and confiscatory.

The rationale behind the elimination of a nonconforming use when a certain percentage of a building has been destroyed by fire is well stated in *State* ex rel. *Covenant Harbor Bible Camp* v. *Steinke* (1959) 7 Wis.2d 308 [96 N.W.2d 356, 361-362], as follows: "Evidently courts have considered that where a non-conforming use has been carried on in a building which has been accidently destroyed *in large measure,* it is not unreasonable to compel the owner to conform to zoning requirements thereafter. The investment in an improvement which may not be readily adaptable to a conforming use has been taken away from him by the accident and not by the ordinance. *With the improvement substantially destroyed,* the land on which it is located will presumably have approximately as much value for use in conformity with the ordinance as otherwise and the public interest in conformity with the ordinance will be served if he is not permitted to continue the non-conforming use." (Italics added; see 2 Rathkopf, The Law of Zoning and Planning (3d ed.) p. 61-15.)

In the case of *Incorporated Village of North Hornell* v. *Rauber,* 181 Misc. 546 [40 N.Y.S.2d 938], the ordinance under consideration provided as follows: "If a non-conforming building or use, existing at the time this ordinance shall become effective, is subsequently changed to a conforming use, or is destroyed by fire, explosion, Act of God, or the public enemy to the extent of more than seventy-five per cent of its assessed valuation, such building or use shall not again be altered or rebuilt, except in conformity with the rules and regulations of the district in which such building is located."

The court stated: "The damage by fire was $350. The true value before the fire of the building and fixtures belonging to

the realty was $1,500. It was destroyed to the extent of more than seventy-five per cent of the $300 appearing upon the roll as the assessed valuation, but less than twenty-five per cent of the true value of the structure. Does this render the application of the Zoning Ordinance to the Rauber sawmill unreasonable, arbitrary and confiscatory?'' (P. 942 [40 N.Y.S.2d].)

It was held that it did, the court stating that ''To enforce this provision of the zoning ordinance against the defendant Rauber in the manner contended for by plaintiff would be oppressive.'' (P. 942 [40 N.Y.S.2d].)

A recent Wisconsin case (*State* ex rel. *Home Ins. Co.* v. *Burt*, 23 Wis.2d 231 [127 N.W.2d 270]) involved a city ordinance which provided that any nonconforming building damaged by fire ''may be reconstructed and used as before if it be done within 12 months of such calamity, unless damaged to an extent represented by 50 percent of the assessed value . . . in which case reconstruction shall be in accordance with the provisions of this ordinance.''

There the assessed value of the building was $10,100, its fair market value was not less than $24,000, and the estimated cost of repair was $6,337.04. The court held that the application of the ordinance to such a situation was ''arbitrary and oppressive,'' pointing out that the building had been ''damaged only to the extent of 26 percent of its stipulated market value, . . .'' (p. 276 [127 N.W.2d]).

In the instant action, the assessor's records show the ''present estimated value'' (before the fire) as $1,786 and the ''estimated cost of replacement'' as $5,104. At the time of the fire appellant was receiving a total monthly rental of $100 from the two tenants. The record before us contains little more upon which to base an evaluation of the subject building.

Even accepting the assessor's estimated value, we find that, under the city's interpretation of section 2-835, a fire causing damage of more than $300, or 16.8 percent of such value, would automatically terminate the existing right to use the building for residential purposes.

Such an interpretation of section 2-835 would, as we have stated above, make its application to the subject property unreasonable, arbitrary and confiscatory.

This would always be so under the existing practice of the assessors in this state to assess property at a percentage of its true value. (See *Michels* v. *Watson*, 229 Cal.App.2d 404, 410 [40 Cal.Rptr. 464].)

In the year 1958, the average assessment level for the counties in this state was approximately 25 percent of the full cash value of the property being assessed (Report of Joint Interim Committee on Assessment Practices, p. 34, Appendix to Journal of the Senate, California, Reg. Session, vol. 1 (1959)). The percentage involved herein, computed from the respective figures of $1,786 and $400, is 22.4 percent.

Thus, property which is assessed at 25 percent of its actual value and is destroyed to the extent of 75 percent of such *assessed* value would be destroyed only to the extent of 18.75 percent of its *actual* value.

To require an owner to abandon the *lawful* existing use of his building whenever (accidental) damage to it exceeds 18.75 percent of its actual value is unreasonable and arbitrary and does not constitute a valid exercise of the police power.

Section 2-835 does not call for any such interpretation. Its purpose is in accord with the general rule, as stated in volume 8, McQuillin on Municipal Corporations, at page 496: "[F]requently under zoning measures if more than a *certain percentage of the value* of a nonconforming building is destroyed by fire or other cause, the right to replace the nonconforming building is terminated. Such a provision is valid and constitutional." (Italics added.)

We see no objection to the use of the term "assessed value" in the ordinance, instead of actual or market value. As commented on by the city manager at the hearing before the city council, discussed below, "assessed valuation is used as a basis since it is a firm figure and is less open to argument."

Thus, the *standard* or gauge used to determine the *proportionate amount* of damage done to the building by fire or other calamity is the ratio between the *assessor's* valuation (for tax purposes) of the building before the calamity and his valuation made thereafter.

As measured by this same yardstick, the respective before and after assessments herein of $400 and $200 fail to show a destruction of the building "to the extent of more than 75 percent of the assessed value thereof . . . ."

Respondent calls attention to the "basic rule that one must exhaust his administrative remedies before applying to the courts for relief" and that "the City Council or the Planning Commission had the power to vary the strict application" of section 2-835. (Respondents refer to sections of the ordinance grouped under article 23, entitled "Adjustments and Appeals.")

This issue is being raised for the first time on appeal. Respondent's answer admitted (by silence) the following allegation of appellant's amended petition: "That prior to the filing of the petition herein your petitioner exhausted his administrative remedies [by applying for an adjustment and a use permit, which were denied]." Since there was no issue at trial as to this question, we need not discuss it further. (*Rembold* v. *City etc. of San Francisco*, 113 Cal.App.2d 795, 799 [249 P.2d 58].)

Furthermore, as stated in *McCaslin* v. *City of Monterey Park*, 163 Cal.App.2d 339, 348-349 [329 P.2d 522]: "Having established the nonconforming use, he [the owner] was entitled to continue his operations as a matter of right. He was not required to obtain a special use permit."

█ Thus, when an owner claims that he has a vested right to an existing nonconforming use he is not required to apply for a variance or use permit before resorting to the courts for relief from an attempted termination of such nonconforming use.

*Proceedings below.* Section 2-788 of the subject ordinance provides: "The City Council may hear and decide appeals involving the enforcement of this ordinance when appeals are based upon questions of the interpretation thereof."

At appellant's request and pursuant to the foregoing section, the city council (respondent) held a hearing on February 27, 1958 for the purpose of interpreting section 2-835 and its application to the subject property.

Respondent accepted the city attorney's advice that "the Council should find that either there is or there is not damage in excess of 75% of the assessed valuation of the building" and that "the Council was not required to find an exact dollar amount [of such damage]."

The hearing concluded with the adoption by the city council of a finding that "the building at 658 Sycamore Street, Newark, is destroyed by fire to an extent of more than 75% of the assessed value thereof according to the assessment thereof of the assessor of the fiscal year during which the destruction occurred." Reduced to dollars, therefore, the amount of damage was found to be merely more than $300.

It is evident that the city council adopted an erroneous standard in its interpretation of section 2-835. This error was repeated by the lower court. We have set forth the correct interpretation above.

The judgment is reversed and the lower court is directed to order that a writ of mandate be issued, directing the respondent to reconsider its interpretation of section 2-835 in the light of this decision and to cause any pending or further application for a permit to repair said fire damage to be processed in accordance therewith.

Shoemaker, P. J., and Taylor, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 16, 1966.